[No. 12961.   In Bank. — October 1, 1889.]

THOMAS QUINN, APPELLANT, v. PATRICK QUINN
ET AL., RESPONDENTS.

PARTNERSHIP — WHAT CONSTITUTES. — An agreement for the working of a
quarry by two persons, one of whom is to manage the business and the
other to give his whole time thereto, the net profits to be divided, con-
stitutes a strict (as contradistinguished from a mining) partnership.

POWER OF PARTNER — TRANSFER OF ENTIRE PROPERTY OF THE FIRM — ABAN-
DONMENT OF THE BUSINESS. — One partner has power to transfer the en-
tire property of the firm, if the other has wholly abandoned the business
to him.   Instance.

APPEAL from a judgment of the Superior Court of
Placer County, and from an order refusing a new trial.

The facts are stated in the opinion.

*F. P. Tuttle*, and *Charles F. Hanlon*, for Appellant.

*John M. Fulweiler*, for Respondents.

HAYNE, C.—Suit for an accounting.   The general
facts are as follows: On March 3, 1885, the plaintiff,
Thomas Quinn, who was then the owner of the lease of
a certain quarry, and the owner of certain personal prop-
erty used in connection therewith, and of some stone
which had been quarried and was on the ground, as-
signed the lease to his brother, Patrick Quinn.   On the
same day, and as part of the same transaction, the two
brothers signed an agreement which referred to the
assignment of the lease, and recited that "the true con-
sideration of said assignment are the terms, covenants,
and agreements herein contained, and the due fulfill-
ment of the same," and provided for the working of the
quarry.   The material provisions of this agreement were
as follows: The expenses of working the quarry, includ-
ing those previously incurred by Thomas, were to be
paid by Patrick "out of the proceeds of the business,"
and the net profits were to be equally divided between

them.   The business was to be conducted in the name of Patrick, and he was to have "complete management and control" thereof.   But Thomas was to "devote his time, labor, and skill" thereto, and was to incur a penalty of $3.50 for every day that he failed to do so.   The business was carried on up to December 12, 1885, when work on the quarry was stopped.   On February 3, 1886, Patrick, without the knowledge or consent of Thomas, transferred the lease and all the personal property to one Healy, who thereupon took possession, and soon afterward ordered Thomas off the premises.   The main question is as to the validity of this transfer.   The court below gave judgment for the defendant Healy, and the plaintiff appeals.

We think that a partnership existed between Thomas and Patrick.   The written agreement provided for the working of the quarry together, and that each was to share equally in the profits of the business.   There was, therefore, "an association of two or more persons, for the purpose of carrying on business together and dividing its profits between them."   And this, in general, constitutes a partnership.   (Civ. Code, sec. 2395.)   There was not only a community in the right to profits, but also a community in the liability for losses.   The agreement provided that the expenses should be paid by the manager "out of the proceeds of the business," but there was no express provision as to liability in case of loss.   The contract was silent on that point.   Hence an equal liability for losses was implied.   (Civ. Code, sec. 2404.)   And the profits were to be divided as profits, and not as rent or compensation for services, such as is allowed by a certain class of cases.   There was, therefore, a partnership.   Moreover, this is alleged by the plaintiff in his complaint, and his counsel insists upon it in his brief.   Such partnership was a strict and not a mere mining partnership.   For even if it be assumed that there could be a mining partnership in such a thing as a quarry

(compare Civ. Code, sec. 2511), the partnership was created by the express agreement of the parties. (*Decker* v. *Howell*, 42 Cal. 636.)

All of the property was partnership property. The lease appears from the partnership agreement to have been transferred solely in consideration of the covenants of said agreement, and is alleged in the complaint to have been transferred "for the purpose of forming said partnership." And the personal property used in connection with the quarry, and the quarried stone which then existed, is in the same category. For the complaint alleges that "it was agreed between him and said Patrick that said personal property should be used by the partnership in their said business, and that the value of said personal property was an advance made by him to the partnership, for which the partnership became indebted to him." It does not appear what became of the stone which had been quarried at the time of the partnership agreement. Probably it was disposed of during the operation of the business. The quarried stone which was in existence at the time of the transfer to Healy is found to have been quarried "at the expense and by the labor of said Patrick and Thomas." And this finding is not attacked by the specifications. The other personal property is found to have been transferred to Patrick with the lease, and this finding is not attacked by the specifications. But even if the evidence could be examined with reference to the matter, we think that, although it perhaps would not show that the transfer of the personal property was by the written agreement, yet that the circumstances show that it was the intention that all the personal property should go into the concern. At any rate, the plaintiff, who has expressly alleged the fact in his complaint, is not in a position to have the findings and judgment against him set aside on the ground that the fact is not as he alleged it.

Then, had one of the partners the right to transfer said

property to a third person without the assent or knowledge of the other? Section 2430 of the Civil Code provides that "a partner, as such, has not authority to do any of the following acts, *unless his copartners have wholly abandoned the business* to him, or are incapable of acting: . . . . 3. To dispose of the whole of the partnership property at once, unless it consists entirely of merchandise." This prohibition, as will readily be seen, does not apply if the non-consenting partner has wholly abandoned the business. The distinct implication is, that if he has wholly abandoned the business, the other partner has authority to make the transfer. Now, the court found, in substance, that before the transfer to Healy the plaintiff had abandoned the business. The precise language of the finding is as follows: "The plaintiff abandoned his right and privilege under his agreement with Patrick before the assignment to Healy, but did not repudiate any obligations." This, we think, must be construed as a finding that the plaintiff abandoned the business. For while he might have abandoned the business without abandoning his right therein, we cannot see how he could have "abandoned" his right to the business without abandoning the business within the meaning of the provision. If this finding is to stand, we think that the judgment will have to be affirmed. The plaintiff attacks it as unsupported by the evidence. But we think that there is sufficient evidence to support it.

It appears that plaintiff did very little work after his agreement of March 3, 1885. He did not work at all in that month. He worked only about fourteen days in April and seventeen days in May, and not at all thereafter. He left the place in June, and did not return until December, which was after work on the quarry had stopped. His own account of his wanderings is as follows: " I went to British Columbia, and remained there about six weeks after leaving the quarries. Not being

able to get work in British Columbia, I returned to San Francisco, and tried for some time to get work there. About the fore part of September, 1885, I went to Mare Island, and worked there for about two months, or more. I then returned to San Francisco, and remained there a while, and some time in the month of December came back to the quarry. From the time I left the quarry, in June, 1885, up to December, 1885, I did not do any work at the quarry." After work on the quarry was stopped, in December, it appears that it laid idle for a while. In this regard, the defendant Healy testified as follows: "At the time I took possession, in February, 1886, the quarry had not been worked for nearly two months. It was all filled up with water, and I got horses and had it pumped out. Tom was there with other idle men, and I let him go to work with them." Not long afterward, plaintiff was ordered away, according to Healy, on account of drunkenness and idleness.

While plaintiff was away, between June and December, as above stated, he seems to have declared to several persons that he had no interest in the quarry. There is evidence tending to show that he so declared to R. J. Harrington in Vallejo, to J. P. M. Phillips at Mare Island, and to C. C. Wollcott at the same place. These declarations do not operate in any way as an estoppel. But they are evidence, in connection with his absence from the quarry, of an abandonment of the business. And taking the whole evidence together, we think that it was sufficient to support the finding in question. And if the court was justified in finding an abandonment of the business, its judgment was right, and not as stated by the learned counsel for the appellant, "*sans* reason, *sans* authority, *sans* excuse."

If it be objected that the conduct of the parties showed a dissolution of the partnership, which was at will, then either partner was authorized to act in liquidation (Civ. Code, sec. 2459), and had authority to dispose of the partnership property. (Civ. Code, sec. 2461.)

Nor is it any objection to the view we have taken that the trial court stated as its conclusion of law that "there was no partnership between Thomas and Patrick Quinn, and that the defendant Healy is entitled to judgment for his costs." If the judgment is right upon the facts found, the appellate court will not reverse for an erroneous statement of the principles of law involved. In view of which the only conclusion of law which is necessary is, that one side is entitled to judgment, etc. (See cases collected in Hayne on New Trial and Appeal, sec. 243.)

The complaint alleges fraud and want of consideration for the transfer to Healy. But the findings negative both of these charges, and the plaintiff does not attack them by his specifications of the insufficiency of the evidence.

We therefore advise that the judgment and order denying a new trial be affirmed.

BELCHER, C. C., and VANCLIEF, C., concurred.

The COURT. — For the reasons given in the foregoing opinion, the judgment and order denying a new trial are affirmed.