[No. 11902. In Bank. — November 30, 1889.]

# H. H. GARDNER, RESPONDENT, v. H. L. TATUM ET AL., APPELLANTS.

NEW TRIAL — EXCESSIVE VERDICT — CONDITIONAL ORDER. — If a verdict for plaintiff is for an excessive amount, the defendant is entitled to have it reduced or a new trial granted without the imposition of any terms upon him, and he cannot be required to accept an offer of *remittitur* of the excess as a finality, so as to deprive him of the right to assign other errors affecting the plaintiff's right of recovery.

PHYSICIANS AND SURGEONS — PRACTICING WITHOUT CERTIFICATE — ILLEGAL CONTRACT — PUBLIC POLICY. — A physician or surgeon who is employed to render services before he has procured the certificate required by the laws of this state regulating the practice of medicine, cannot recover any compensation for the services rendered before the procuring of the certificate upon any contract, express or implied, the contract being illegal and against public policy, though he may recover upon an implied contract for services rendered after such certificate is procured.

ID. — RELATION OF CERTIFICATE. — A certificate applied and paid for by a physician, before a contract for his services is entered into, will not, when granted, relate to the date of the application and payment, so as to entitle him to recover for services rendered before the certificate is actually procured.

ID. — EVIDENCE — DISCOVERY OF NEW METHOD OF TREATMENT — OPINION OF WITNESS. — A physician cannot testify that in rendering the services sued for. he made discoveries as to new and improved methods of treatment. Such discovery cannot bear upon the question of the defendant's liability, nor can he be asked for his opinion as to discoveries made, as distinguished from what he actually did.

ID. — EVIDENCE — TREATMENT BY ANOTHER PHYSICIAN. — It is error to allow evidence in behalf of a physician suing for his services, as to the nature or value of former treatment by another physician before the plaintiff's services were called in.

APPEAL from a judgment of the Superior Court of the city and county of San Francisco, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*Langhorne & Miller*, for Appellants.

*J. F. Wendell*, and *S. G. Hilborn*, for Respondent.

PATERSON, J. — Plaintiff, who is a physician and surgeon, was called in by defendants, and began to treat their

employee, Cook, on March 8, 1883. He continued to visit
the patient until October 2, 1883. On September 24th he
made a demand upon defendants for the sum of $2,386.
Thereupon defendants notified him that they considered
his charges exorbitant, and that they would not be re-
sponsible for any further services in behalf of Cook. He
then brought this action to recover the sum of $2,406,
alleged to be the reasonable value of his services. The
jury found a verdict in his behalf for the sum of $1,800,
and judgment was entered for that amount, and $318
costs and disbursements. The defendants moved for a
new trial, specifying several errors of law, and claiming
that the verdict was excessive. The defendants convinced
the learned judge who heard and decided the motion
that the verdict was excessive, and not warranted by the
evidence, and he thereupon caused to be entered a con-
ditional minute order, of which the following is a copy:
"The motion for a new trial herein will be denied, pro-
vided that plaintiff, within thirty days from this date,
offer to remit the sum of eight hundred dollars from the
amount of the verdict herein; provided, also, that the
defendants shall agree to accept said verdict and judg-
ment so modified as a finality, said offer to remit not to
be binding upon the plaintiff unless accepted by defend-
ants as a finality. Said motion for a new trial to be
granted unless said offer to remit by plaintiff be so
made."

In accordance with the order, plaintiff filed an offer to
remit the sum of eight hundred dollars from the amount
of the verdict, provided the defendants should accept
the verdict and judgment so modified as a finality. The
defendants elected not to accept the terms of the order,
whereupon the court made an order denying the motion
in the following language: "It appearing that plaintiff
has offered to remit said sum as directed, and within
the time directed, and no error appearing in the record,
and the verdict as rendered being sustained by a pre-

ponderance of evidence, *unless as to the amount of the verdict,* it is hereby ordered that the motion for a new trial be and the same is hereby denied."

We are of opinion that the court erred in denying the motion. If the verdict was for an excessive amount, and it is made clear by the language of both orders that the court believed it was,— and the evidence, we think, fully sustains the court in such belief,— defendants were entitled to have it reduced without the imposition of any terms upon them, and without being deprived of the right to correct any errors leading to a judgment which, although supported by the evidence admitted, is nevertheless erroneous. It was not the fault of defendants that the jury found the value of plaintiff's services to be nearly double what the court thought the evidence showed it to be, and they ought not to be punished because the jury erred. The court was of opinion that no errors had been committed during the trial, but that the verdict was for eight hundred dollars in excess of what the defendants justly owed the plaintiff. Hence its order, in effect, is a penalty of eight hundred dollars against the defendants, if they fail to accept the rulings of the court, made during the trial, as just and final. Further along we shall find a practical illustration of the injustice which would result if this could be done. The court admitted evidence as to the value of services for which plaintiff was not under any circumstances entitled to recover.

At the time plaintiff was employed by defendants he had not procured the certificate required by the laws of this state regulating the practice of medicine. (" An act to regulate the practice of medicine," Stats. 1875–76, p. 792, and an act supplemental thereto, Stats. 1877–78, p. 918.) By section 13 of the first act it is provided that " any person practicing medicine or surgery in this state, without complying with the provisions of this act, shall be punished by a fine of not less than fifty dollars,

and not more than five hundred dollars, or be impris-
oned in the county jail for a period of not less than
thirty days, nor more than three hundred and sixty-five
days, or by both such fine and imprisonment, for each
and every offense." And by section 7 of the amenda-
tory act of 1878, a person practicing medicine without
having first procured a certificate from one of the medi-
cal boards is guilty of a misdemeanor, and subject to
the penalties provided in section 13 of the act of 1876.
By the terms of section 6 he is required to have his cer-
tificate recorded in the office of the clerk of the county
in which he resides. The plaintiff's application was not
granted by the board of examiners until March 12th,
and his certificate was not received by him until March
21st; it was recorded March 29th.

Under the law referred to and the facts, we think the
court erred in refusing the first instruction of defendant,
to the effect that plaintiff was not entitled to recover
from defendants any compensation for medical services
rendered between March 3 and March 12, 1888. "The
general proposition is well established, that a contract
founded on an illegal consideration, or which is made
for the purpose of furthering any matter or thing pro-
hibited by statute, or to aid or assist any party therein,
is void. This rule applies to every contract which is
founded on a transaction *malum in se*, or which is pro-
hibited by statute, on the ground of public policy."
(*Swanger* v. *Mayberry*, 59 Cal. 91; *Ladda* v. *Hawley*, 57
Cal. 51.) This principle is in accord with the express
provision of our Civil Code, which makes that unlawful
which is either contrary to the express provision of law,
or "contrary to the policy of express law, though not
expressly prohibited." (Civ. Code, sec. 1667.) In con-
struing the acts above referred to, this court said in *Ex
parte Frazier*, 54 Cal. 94: "The title of the act sufficiently
indicates its main purpose and design. Its general frame-
work shows that it was intended to require of those alone

authorized to practice that knowledge of pathology, anatomy, and physiology recognized as necessary by every school of the science of medicine." And this being the main object of the law, it must follow that it is the policy of the law to protect the public health, and prevent imposition upon those in need of medical advice and care. A contract made, therefore, to render medical services with one who has not obtained a certificate, showing that he possesses the necessary qualifications, — who has not complied with the law, — is contrary to such policy, and is therefore void.

It is claimed on behalf of appellant that the contract was an entire contract, and if void in part, was void *in toto.* This contention, we think, cannot be sustained. The contract was an implied one. The law implied a promise to pay for each visit as it was made. The most that can be said in support of the contention is, that the law will not imply a promise to pay for services which have been illegally rendered. This objection can apply only to such services as were rendered prior to March 12th, when plaintiff obtained his certificate. There was no violation of the law in any services rendered by the plaintiff subsequent to that date, and there is no reason why the law should not imply a promise to pay for them. It is claimed by respondent that the court under this view should order the amount recovered for services prior to March 12th to be remitted, and sustain the judgment for the remainder. Instruction No. 1, offered by defendant and refused, shows that the case was tried in the court below upon the theory that the plaintiff could recover for services rendered during the entire period of his employment; and it does not appear with sufficient clearness, we think, what was the value of the services rendered from March 3d to March 12th.

Respondent claims that the issuance to the plaintiff of a certificate on March 12th related back to the time when he made his application, which was prior to the

date of his employment, and that this relation rendered the services valid. This contention, we think, cannot be sustained. (*Ladda* v. *Hawley, supra.*)

We think that the court erred in allowing the plaintiff to testify as to discoveries he made in skin-grafting while caring for the patient, Cook. We are unable to see what bearing upon the question of the liability of the defendants this testimony would have. They certainly could not be made liable for any extraordinary services performed in experimenting upon the patient for the purpose of discovering new and improved methods of treatment in skin-grafting. The question was furthermore objectionable, on the ground that it called for the opinion of the witness as to the discoveries made, not as to what he had actually done.

It was error, also, we think, to allow the witness Cook to state what was the result of Dr. Worth's treatment. The value of the plaintiff's services in no way depended upon the nature or value of Dr. Worth's treatment. If Dr. Worth's treatment was bad, that fact did not make Dr. Gardner's any better.

Judgment and order reversed, and cause remanded for a new trial.

SHARPSTEIN, J., McFARLAND, J., WORKS, J., and BEATTY, C. J., concurred.

Fox, J., dissenting.—I dissent. I do not think that there is anything in the record to justify the conclusion that the court below thought the verdict excessive. The order recited in the leading opinion was an unusual one, but taking the whole record together, the broadest construction that to my mind can be given to it is, that the court below thought that under the circumstances of the case the verdict was a hardship to the defendants, and on the other hand the delays of a new trial and possible appeal would also work a hardship to the plaintiff, and that it would be better for both parties to settle

the matter on the basis of the order, which it gave them an opportunity of doing. But the very terms of the order imply that the court did not consider the defendants entitled to that reduction as a matter of right or of law, and the weight of the evidence is against any such implication. On the contrary, the preponderance of the evidence is in favor of a much larger amount than that allowed by the verdict. If the amount of the bill was a surprise to the defendants, it was in a large degree their own fault, in utterly neglecting to ascertain the character of the case which they had committed to plaintiff's care; and to make some arrangement as to the extent of the charge to be made. The evidence shows that the case was one attended with great difficulty, requiring great skill and constant care, and that it was attended with such success as had made it phenomenal in that class of surgical cases.

As to the point made on the requirements of the "act to regulate the practice of medicine," and the act supplementary thereto, the inhibition of the statute ran against the person, and not against the business. As was said by the court in *Aitkin* v. *Blaisdell*, 41 Vt. 666: "If a man engage in the kind of business referred to, he is engaged in a legal business, whether he has a license or not. If he has no license, he has no legal right to do it, and subjects himself to the penalty. The law, we think, was intended to operate upon the person, and not upon the business." In this case the plaintiff possessed every qualification required by the law, and not only proved it to the entire satisfaction of the board of examiners, but also paid his license fee, before entering upon this employment, and only failed to receive the license at the time because of a failure of the board to hold a meeting in time to grant it earlier. It was not his fault that the license was not in his possession.

The cases of *Ladda* v. *Hawley* and *Swanger* v. *Mayberry*, cited in the leading opinion, are both cases of contract

for stealing timber from the government of the United States,— a business unlawful *per se*,— and the judgments of the court refusing to enforce the contracts have no bearing in this case.  I do not, therefore, think the court erred in refusing the instruction asked by defendants. Neither does it appear to me that the defendants were injured by the rulings of the court in the admission of evidence.

In my opinion the judgment should be affirmed, but if it be determined that it should be reduced by disallowing for the service rendered before the plaintiff received his license, it is better to make that modification than to reverse the judgment and remand the case for a new trial.   The record shows the number of visits made and operations performed, and the charge made for each, and it seems to me that there is no substantial difficulty in the way of making a deduction for the first nine days of that service, which shall conform to the justice of the case, if it shall be determined that such deduction ought to be made, it being understood and apparent that the jury have allowed just about seventy-five per cent of the whole charge, and that the evidence of every surgeon called in the case puts the value at more than was charged.

THORNTON, J., also dissented.

Rehearing denied.