[Civ. No. 5000. First Appellate District, Division One.—April 11, 1925.]

## E. FIRPO, Respondent, v. LELAND S. MURPHY et al., Appellants.

[1] REAL ESTATE BROKERS' ACT—POSSESSION OF LICENSE BY SALESMAN IN EMPLOY OF BROKER—KNOWLEDGE OF BROKER.—The Real Estate Brokers' Act (Stats. 1919, p. 1252, amended in 1921; Stats. 1921, p. 1295) charges the employer with knowledge of the fact whether his salesman has or has not a license and contemplates that no business can be conducted by a broker through a salesman acting in his behalf until a license is procured by him or reissued when there has been a change in the employment of the salesman.

[2] ID.—DESIGN OF STATUTE.—The Real Estate Brokers' Act is a statute designed for the protection of the public.

[3] ID.—STATUTE FOR PROTECTION OF PUBLIC—CONTRACT MADE IN VIOLATION OF VOID.—Whenever a statute is made for the protection of the public a contract in violation of its provisions is void.

[4] ID.—ILLEGALITY OF CONTRACT.—While there is no express declaration in the Real Estate Brokers' Act that the transactions condemned are unlawful, or that no recovery shall be had thereon in the event its provisions are violated, still it being designed for the protection of the public and a penalty being prescribed for a violation thereof, such penalty is the equivalent of an express prohibition, and a contract made contrary to the terms thereof is void, and whenever the illegality appears, whether the evidence comes from one side or the other, the disclosure is fatal to the case.

[5] ID. — FAILURE OF BROKER TO PROCURE LICENSE — COMMISSIONS.— Where a broker fails to procure the license required by law to carry on his business he cannot recover commissions as such.

---

3. See 6 R. C. L. 701–704; 6 Cal. Jur. 103.

5. Right of unlicensed real estate broker to commissions, notes, 5 Ann. Cas. 897; Ann. Cas. 1912D, 378; 12 L. R. A. (N. S.) 615. See, also, 4 R. C. L. 302.

[6] Id.—Procuring of Lessees for Apartment House—Deal Handled by Unlicensed Salesman—Right of Employer to Commissions — Illegal Contract — Assignments. — A licensed real estate broker is not entitled to commissions for obtaining, solely through an unlicensed salesman in its employ, lessees of an apartment house, as the contract for commissions under such circumstances is void under the Real Estate Brokers' Act; and the broker having violated the law in failing to see to it that its salesman had a license before it permitted him to do business in its behalf, the interest of such broker in the transaction is tainted with all the illegality which the statute gives to it, and the assignee of the broker takes the cause of action subject to its infirmities.

---

(1) 9 C. J., p. 565, n. 52.    (2) 9 C. J., p. 512, n. 46.    (3) 13 C. J., p. 423, n. 86.    (4) 13 C. J., p. 421, n. 81.    (5) 9 C. J., p. 565, n. 52. (6) 9 C. J., p. 565, n. 52.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Edmund P. Mogan, Judge. Reversed.

The facts are stated in the opinion of the court.

Robert B. Gaylord for Appellants.

Raymond Perry for Respondent.

TYLER, P. J.—Action to recover a broker's commission.

The complaint recites that defendants became indebted to plaintiff's assignors, Rucker & Tarp, a copartnership, in the sum of $770 for and as a commission for the securing of a lease of a certain apartment house.

The complaint was demurred to upon the ground that it did not sufficiently appear therefrom whether at the time the alleged cause of action arose, plaintiff's assignor or its salesman, who handled the transaction, were duly licensed under and pursuant to the provisions of the act of the legislature regulating such brokers and salesmen, approved May 22, 1919. (Stats. 1919, p. 1252, amended in 1921; Stats. 1921, pp. 1294, 1295.)

The demurrer was overruled.

Defendants answering denied specifically the allegations of the complaint and as a second defense alleged on in-

formation and belief that neither plaintiff's assignor nor its salesman, who it is alleged rendered the entire services, had a registered license to transact business under or pursuant to the act mentioned.

Judgment went in favor of plaintiff, and defendants appeal.

It is admitted that a tenant was obtained and a lease executed. As ground for reversal, however, defendants claim that as the evidence shows without conflict that the transaction was handled by a salesman employed by Rucker & Tarp, who held no license, that plaintiff, therefore, cannot recover as the contract is unlawful and contrary to the policy of express law. They also claim that as the contract was not in writing, no recovery can be had thereon. Lack of evidence to sustain the amount of the judgment is also assigned as error. If there is merit in defendants' first contention the other objections raised become unimportant. The evidence shows without conflict that one Thomas L. Ricks was employed by Rucker & Tarp as a salesman. He had previously been employed as such by another firm in the year 1922, and was duly licensed as a salesman for such firm. He entered the employ of Rucker & Tarp about October or November of that year, but no surrender of his license as a salesman of his former employer was ever had as provided for by statute. Under his new employment he acted as salesman to negotiate leases and the sale of real estate. In the performance of these duties he procured employment from defendant Murphy to obtain a tenant for a certain apartment house owned by him. He was instructed by his employers to carry on the negotiations between the parties and come to an agreement. The only connection that Rucker & Tarp, his employers, had in the transaction was that they kept in touch with the negotiations as reported by Ricks. After the tenant had been obtained and the lease executed, there was a dispute between the owner and Rucker as to the amount of the compensation to be paid, there being no express agreement by the parties upon the subject. There is evidence in the record to show that Murphy was willing to pay the sum of five hundred dollars, but objected to paying the amount equivalent to the first month's

rent which it seems was the rate fixed by the Real Estate Board's schedule. The negotiations for the lease were commenced in December, 1922, and they were completed and the lease executed on January 26, 1923. At no time during this period did Mr. Ricks hold a license in accordance with the terms of the statute hereinafter referred to. Ricks made no attempt during the month of January, 1923, to obtain a salesman's license for that year, nor until the following February, nearly a month after the transaction was closed. It may be said in passing that licenses under the act automatically expire at the close of each calendar year. They do not run from year to year, but a new license is issued for each year. If no application, therefore, is made on or before January 1st, a salesman has no license for the coming calendar year merely because he held one during the preceding year. (Stats. 1919, p. 1256, subd. 4, sec. 10.) Other provisions of the act controlling the situation are as follows: Section 1, defining real estate brokers and salesmen, provides in substance that it shall be unlawful for any person, partnership or corporation, to engage in the business or act in the capacity of a real estate broker or a real estate salesman in this state without first obtaining a license therefor. Section 2 defines a real estate salesman, among other things, to be one who is employed by a broker or others in their interest "to lease or offer to lease" any real estate "as a whole or partial vocation." By section 17 of the act it is made a criminal offense to act as such salesman without a license. Section 18 makes it unlawful for any licensed broker to pay a commission for performing any of the acts specified to any person who is not a licensed broker or salesman. Section 19 permits the commissioner to temporarily suspend or permanently revoke a license for a violation of certain provisions of the act. Section 20 denies to any person, copartnership, or corporation engaged in the business or acting in the capacity of a real estate broker or real estate salesman the right to maintain any action in the courts of this state for the collection of compensation for the performance of any of the acts mentioned in section 2 without alleging and proving that such person, copartnership or corporation was a duly licensed real estate broker or real estate salesman at the time the alleged cause

of action arose. Section 11, as amended (Stats. 1921, p. 1295, sec. 1), provides that the license of both broker and salesman shall be ''prominently displayed'' in the office of the broker; and that the license authorizes business only at a location named in the license; it further provides that the salesman's license shall remain in the possession of the employing broker until it is canceled or the employment terminated; that when the salesman leaves the broker's employ, the broker shall return the salesman's license to the commissioner for cancellation. It also declares that a change of location without notification to the commissioner, and the issuance of a new license automatically cancels the license previously issued.

[1] It is therefore manifest from the various provisions of the act that the law charges the employer with knowledge of the fact whether his salesman has or has not a license and contemplates that no business can be conducted by a broker through a salesman acting in his behalf until a license is procured by him or reissued when there has been a change in the employment of the salesman. [2] The statute in question is one designed for the protection of the public. It is in keeping with the statutes of a similar character regulating the pawnbrokerage business and certain professions.

[3] Whenever a statute is made for the protection of the public a contract in violation of its provisions is void. The Pawnbrokers Act provides that it is a misdemeanor to carry on the business of pawnbroker without a license. (Pen. Code, secs. 338, 339.)

[4] While there is no express declaration in these sections that the transactions condemned are unlawful, or that no recovery shall be had thereon in the event that the provisions are violated, still it has been held that they, being designed for the protection of the public, and a penalty prescribed for a violation thereof, that such penalty is the equivalent of an express prohibition, and that a contract made contrary to the terms thereof is void, and further that whenever the illegality appears, whether the evidence comes from one side or the other, the disclosure is fatal to the case. (*Levinson* v. *Boas,* 150 Cal. 185 [11 Ann. Cas. 661, 12 L. R. A. (N. S.) 575, 88 Pac. 825].)

So, also, it has been held that where a physician or surgeon who is employed before he has procured the certificate required by the laws of this state regulating the practice of medicine, cannot recover any compensation for the services rendered before the procuring of the certificate upon any contract, express or implied, the contract being illegal and against public policy.

The principle is in accord with the positive provisions of our Civil Code which makes that unlawful which is either contrary to the express provision of law, or contrary to the policy of express law, though not in terms prohibited. (*Gardner* v. *Tatum,* 81 Cal. 370 [22 Pac. 880]; Civ. Code, sec. 1667.)

[5] ˙The rule is universally established that where a broker fails to procure the license required by law to carry on his business he cannot recover commissions for acts as such. (*Whitfield* v. *Huling,* 50 Ill. App. 179; *Richardson* v. *Brix,* 94 Iowa, 626 [63 N. W. 325]; *Young* v. *Denning,* 52 Kan. 629 [35 Pac. 207]; *Buckley* v. *Humason,* 50 Minn. 195 [36 Am. St. Rep. 637, 16 L. R. A. 423, 52 N. W. 385].)

In some of the states courts have allowed the recovery of a commission by a nonlicensed broker where the license laws are enacted solely as revenue measures, in 'which case it has been held that such laws have no effect on the rights of the parties *inter se.*

[6] That situation is not here presented. The cause of action here relied upon is founded on the violation of a state law. Plaintiff's assignor having carried on its business in violation of law any rights arising out of such unlawful transaction can form no proper cause of action.

Counsel for respondent seeks to avoid the effect of this rule by claiming that plaintiff's assignor having so far as it was concerned complied with the requirement of the act with reference to its license, that its assignee can properly maintain the action.

If such a contention could be maintained it would in a measure destroy the very purpose of the creation of the act.

The partnership did violate the law in failing to see to it that its salesman had a license before it permitted him to do business in its behalf. The interest of the copartnership in the transaction is tainted with all the illegality which

the statute gives to it and the assignee takes the cause of action subject to its infirmities.

The judgment is reversed.

Cashin, J., and Knight, J., concurred.

A petition by respondent to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 1, 1925.

All the Justices concurred.