[Civ. No. 4063. Second Appellate District, Division Two.—October 28, 1925.]

## CHARLES H. WISE, Respondent, v. W. F. RADIS, Appellant.

[1] REAL ESTATE BROKERS' ACT—CONSTRUCTION OF SECTION 2—SINGLE ACT—BROKERS.—Under the provisions of section 2 of the Real Estate Brokers' Act (Stats. 1919, p. 1252), as amended (Stats. 1921, p. 1294), a single act, for compensation, of buying or selling real estate, constitutes the person, copartnership, or corporation making such offer, sale, or purchase a real estate broker.

[2] BROKER'S COMMISSIONS—UNLICENSED BROKER—RIGHT TO COMMISSIONS—ILLEGAL CONTRACTS.—The contract of an unlicensed real estate broker to act for another in the capacity of such broker for compensation is illegal and unenforceable, and no subsequent compliance with the statute will cure the illegality of the previous contract; but section 20 of the Real Estate Brokers' Act permits a

---

1. See 4 Cal. Jur. 549.
2. See 4 Cal. Jur. 551, and supplement.

recovery by the broker, though he possessed no license when his contract was entered into with the person agreeing to pay the commission, if he in fact became a duly licensed broker at the time when his commission was earned and became payable.

[3] ID. — ACTION TO RECOVER COMMISSIONS — FAILURE TO PROCURE LICENSE.—Where two real estate brokers enter into an agreement to work together as brokers in negotiating the sale and purchase of real property and to divide equally the profits and losses made and incurred by them in such deals, acts performed by them in bringing buyer and seller together and in negotiating a sale of real property for the owner are acts performed by them as real estate brokers for an agreed compensation, and where one of said brokers did not procure the license required by the Real Estate Brokers' Act until after the negotiation of a sale of real property, he cannot recover from the other broker his share of the commission earned in that transaction.

[4] ID.—AGREEMENT TO SHARE PROFITS—JOINT ENTERPRISE—PARTNERSHIP.—The profits resulting from the joint enterprise in which said brokers were engaged, and of which each was to receive an equal share, were "profits" in the strict sense of that term, and did not constitute a compensation to be paid by one to the other for services rendered. Their joint venture was an association of two persons to carry on a definite joint enterprise and to divide the profits and losses, and this in general constitutes a partnership under section 2395 of the Civil Code.

[5] ID.—RIGHT TO RECOVER COMMISSIONS—FAILURE TO PROCURE LICENSE.—The failure of one of the brokers to obtain the license required by the Real Estate Brokers' Act until some time after the earning of the commissions and the accrual of the cause of action therefor, rendered the transaction illegal and void, so far as it affected the parties as real estate brokers, and no recovery of the commission could have been enforced by the parties against the owner of the property.

[6] ID.—ILLEGAL CONTRACT—ENFORCEMENT OF RIGHTS.—A party to an illegal contract or an illegal transaction cannot come into a court of law and ask it to carry out the illegal contract or to enforce rights arising out of the illegal transaction, and he cannot set up a case in which he necessarily must disclose the illegal contract or the illegal transaction as the basis of his claim.

[7] ID.—PARTNERSHIP—ILLEGAL CONTRACT—RELIEF.—In an action by one of two real estate brokers to recover from the other his share of a commission jointly earned by them in negotiating the sale of certain real property, if the issuance of a copartnership license

3.   See 4 Cal. Jur. 551, and supplement.
6.   See 6 Cal. Jur. 150; 6 R. C. L. 816.

was a necessary prerequisite to the legality of the firm transactions which plaintiff and defendant jointly carried on as copartners, and no license was ever issued or was ever in the contemplation of the parties, the partnership contract was illegal from its inception, and the court will not lend its aid to assist either party, notwithstanding the receipt by defendant of partnership profits, but will leave both parties where it finds them.

[8] ID.—ACTION TO ENFORCE ILLEGAL CONTRACT — PARTIES IN PARI DELICTO—PUBLIC POLICY.—In such action, whether the partnership contract be regarded as illegal from the beginning because of the failure to take out a partnership license, or whether it became illegal by reason of plaintiff's failure to maintain his status as a duly licensed real estate broker, the action must be regarded as one to enforce an illegal contract, and both parties being *in pari delicto,* the defendant will be permitted to set up its illegality as a defense, even though in doing so he may allege his own moral turpitude, not out of any regard for the defendant who sets it up, but only on account of public interest.

[9] ID.—LEGAL AND ILLEGAL TRANSACTIONS—DEFENSES.—Where there have been both legal and illegal transactions, the defendant cannot set up, as a defense to an action for an accounting of the legal transactions, the fact that some other transactions are illegal, especially where the transactions are distinct and not so connected as to require the court to pass upon those which are illegal.

[10] ID.—NEW CONTRACT SETTLING RIGHTS — ACCOUNTING.—The doctrine that if, after an illegal contract has been executed, the parties make a new one settling their rights as between themselves, the latter contract governs and the former is not to be reckoned with, has no application in an action by a real estate broker to recover his share of the profits of a joint enterprise, which is defended on the ground that the contract between plaintiff and defendant, which is still executory, was illegal because of the failure of plaintiff to procure a broker's license.

(1) 9 **C. J.**, p. 514, n. 53, p. 566, n. 54.    (2) 9 **C. J.**, p. 565, n. 52, 53.    (3) 9 **C. J.**, p. 585, n. 85 New.    (4) 30 **Cyc.**, p. 379, n. 31. (5) 9 **C. J.**, p. 565, n. 52.    (6) 13 **C. J.**, p. 493, n. 18.    (7) 9 **C. J.**, p. 585, n. 85 New; 13 **C. J.**, p. 504, n. 67.    (8) 13 **C. J.**, p. 496, n. 22, 23.    (9) 13 **C. J.**, p. 502, n. 57, p. 515, n. 56.    (10) 13 **C. J.**, p. 511, n. 23.

APPEAL from a judgment of the Superior Court of Los Angeles County.   Stanley Murray, Judge Presiding.   Reversed.

9.   See 6 **Cal. Jur.** 160; 6 **R. C. L.** 821.

The facts are stated in the opinion of the court.

Clark, Law & Clay for Appellant.

C. C. Mishler, John F. Keogh, and Julius V. Patrosso for Respondent.

FINLAYSON, P. J.—This is an action to recover a sum which plaintiff claims is due him as his share of a commission jointly earned by himself and defendant in negotiating the sale of certain real property on behalf of the owner. The commission was paid to the defendant by the owner of the property. The complaint, which is cast in the form of a common count for money had and received, alleges that defendant is indebted to plaintiff in the sum of $875 for money received by the former to and for plaintiff's use. From a judgment for plaintiff in the sum sued for the defendant appeals.

It is the theory of plaintiff that he and defendant were partners in the real estate transaction in which was earned the commission that was paid to defendant, and that, therefore, he is entitled to recover from defendant one-half of the commission so received by the latter. Briefly, the facts are these: During the year 1921 each of the parties to the action was a real estate broker engaged in business as such in the city of Los Angeles. Each maintained an office at his own residence and each had obtained a real estate broker's license for the year 1921, issued to him individually. In the early part of that year they orally agreed to work together as brokers in negotiating the purchase and sale of real properties. They agreed to divide equally all profits and losses made or incurred by them in each deal. Plaintiff testified that "each deal would be closed up separately"; that upon closing each deal they "would divide the profits after the expenses had been paid," and that they "arranged to and did work together" on each deal. Some time in the month of November, 1921, the property the sale of which resulted in the payment of the commission here in question was listed by the owner with the parties to this action to negotiate a sale thereof as real estate brokers. Thereupon plaintiff and defendant caused a painted sign to be placed upon the premises which read, in part: "For Sale. See Radis and

Wise . . . exclusive agents." On January 6, 1922, plaintiff and defendant commenced the negotiations with the prospective buyer who later purchased the property; and on January 10, 1922, that person and the owner, who meanwhile had been introduced to one another by the parties to this action, came to an agreement upon the terms of the sale. On that date, therefore (January 10, 1922), plaintiff and defendant earned the commission which the vendor had agreed to pay them for their services. Thereafter, and prior to the commencement of the action, the vendor paid the full amount of the commission, amounting to $1,750, to defendant, who keeps it and refuses to pay any part of it to plaintiff. It is a fair inference from all the evidence in the case that defendant, before the commencement of the negotiations with the person who later bought the property, had applied for and had received his real estate broker's license for the year 1922. Plaintiff, however, did not apply for his license for the year 1922 until January 28th of that year, and none was issued to him until the thirty-first day of that month, or about three weeks after the sale of the property and the accrual of any right of action against the owner for the agreed commission. It may reasonably be inferred from all the testimony in the case that at no time did plaintiff or defendant apply for or receive a copartnership real estate broker's license, i. e., a real estate broker's license issued to the copartnership, as such, in the firm name. Whatever license either possessed was one which had been issued to him individually and not as a member of a copartnership.

Appellant contends: (1) That since he and respondent earned the commission as copartners, the latter must fail in this action for the reason that one partner cannot maintain *assumpsit* for moneys received by his copartner, but must resort to equity for an accounting; and (2) that to succeed in his action respondent must rely upon a contract which is illegal under the provisions of the Real Estate Brokers' Act. (Stats. 1919, p. 1252; amended 1921, Stats. 1921, p. 1294.) In reply to appellant's first point respondent contends that each real estate "deal" jointly participated in by them was a separate partnership transaction, and that while it is the general rule that one partner cannot maintain an action at law for moneys received by his copartner, but must resort to equity for an accounting, there is an exception to this rule

which permits an action in *assumpsit* where the right of action is based upon a single partnership transaction and the facts are such that no complex account, involving a variety of partnership transactions, is necessary. As bearing upon this reply to appellant's first point, *Jepsen* v. *Beck,* 78 Cal. 540 [21 Pac. 184], and the authorities cited in the note to *Martin* v. *McBryde,* 21 A. L. R. 57, 60, and 64, may be consulted. However, if appellant's second point is well taken, and we think it is, it will not be necessary to determine the question presented by his first point. We shall proceed, therefore, to a consideration of appellant's second point. This point involves two main questions: (1) Was the contract for a commission which was made with the owner of the property illegal under the terms of the Real Estate Brokers' Act? Or, what in effect amounts to the same thing, was the transaction under which the commission was earned an illegal transaction? (2) If the contract or transaction was illegal, must respondent rely upon it in order to make out a case against appellant for his share of the commission?

The Real Estate Brokers' Act contains these provisions: Section 1. "It shall be unlawful for any person, copartnership or corporation to engage in the business, or act in the capacity of, a real estate broker . . . without first obtaining a license therefor." Section 2. "A real estate broker within the meaning of this act is a person, copartnership or corporation who, for a compensation, sells, or offers for sale, buys, or offers to buy, or negotiates the purchase or sale or exchange of real estate . . . for others, as a whole or partial vocation. . . . One act, for a compensation, of buying or selling real estate of or for another, or offering for another to buy or sell . . . real estate . . . shall constitute the person, copartnership or corporation making such offer, sale or purchase . . . a real estate broker within the meaning of this act." Section 10. " . . . If the licensee be a copartnership, the license issued to it shall entitle one member of said copartnership to engage in the business of real estate broker within the meaning of this act. For each other member of such copartnership who engages in the business of real estate broker within the meaning of this act the annual fee shall be two dollars . . . all licenses shall expire on December thirty-first of each year." Section 11. " . . . Each person, firm or corporation licensed as a broker under the

provisions of this act shall be required to have and maintain a definite place of business in the State of California which shall serve as his [or its] office for the transaction of business.'' By section 9 of the act it is provided that each application for a license shall not only state the name of the person, copartnership, or corporation applying for the same, but shall also state ''the location of the place or places of business for which such license is desired.'' Section 11a provides that every individual, firm, or corporation licensed as a broker ''shall erect or maintain a sign on the premises wherein is located his [or its] place of business, on which shall be plainly stated that he [or it] is a real estate broker.'' Section 18. ''It shall be unlawful for any licensed broker to pay a commission for performing any of the acts herein specified to any person who is not a licensed broker, or a licensed salesman.'' Section 20. ''No person, copartnership or corporation engaged in the business or acting in the capacity of a real estate broker or a real estate salesman within this state shall bring or maintain any action in the courts of this state for the collection of compensation for the performance of any of the acts mentioned in section two hereof without alleging and proving that such person, copartnership or corporation was a duly licensed real estate broker or real estate salesman at the time the alleged cause of action arose.

[1] The provision in section 2 to the effect that a single act, for a compensation, of buying or selling real estate of or for another, or offering for another to buy or sell real estate, constitutes the person, copartnership, or corporation making such offer, sale, or purchase a real estate broker, means precisely what it says. The particularity with which the clause is phrased ''leaves no room for any other interpretation than that which its plain terms import.'' (*Haas* v. *Greenwald,* 196 Cal. 236 [237 Pac. 38].)

The licenses required by the act do not run from year to year. They automatically expire at the close of each calendar year, and a new license must be applied for and issued for the ensuing year. (Sec. 10, subd. 4; *Firpo* v. *Murphy,* 72 Cal. App. 249 [236 Pac. 968].)

[2] The contract of an unlicensed real estate broker to act for another in the capacity of such broker, for a compensation, is, without doubt, illegal and unenforceable. (*Hous-*

*ton* v. *Williams,* 53 Cal. App. 267 [200 Pac. 55]; *Gardner* v. *Tatum,* 81 Cal. 370 [22 Pac. 880].) It has been held in analogous cases that no subsequent compliance with the statute will cure the illegality of the previous contract. (*Gardner* v. *Tatum, supra; Luce* v. *Cook,* 227 Pa. 224 [75 Atl. 1098].) Section 20 of this act, however, does, in effect and somewhat as an act of grace, permit a recovery by the broker, though he possessed no license when his contract was entered into with the person agreeing to pay the commission, if he in fact became a duly licensed broker by the time his cause of action arose, i. e., at the time when his commission was earned and became payable. (*Houston* v. *Williams, supra.*) That, however, is not this case. No license was issued to respondent for the year 1922 until after the "deal" was closed and the commission was earned.

[3] With the above provisions of the statute in mind, we proceed now to a consideration of the legality of the transaction which the parties to this action carried on with the buyer and the seller of the property. It is obvious that the acts performed by appellant and respondent in bringing buyer and seller together and in negotiating the sale of the property on behalf of the latter were acts performed by them as real estate brokers for an agreed compensation. Those acts, therefore, constituted an illegal transaction, unless the requisite license had been issued at the times when the negotiations were being conducted. Equally obvious is it that if the requisite license was not issued, the commission which was paid by the owner to appellant was paid as the result of an illegal transaction.

[4] Under the facts of this case the transaction was illegal whether we regard the relation between appellant and respondent as that of partners, in the true sense of that term, or not—though we incline to the view that they were partners in the full meaning of the word. The profits resulting from the joint venture in which they were engaged, and of which each was to receive an equal share, were "profits" in the strict sense of that term, and did not constitute a compensation to be paid by one to the other for services rendered. Their joint venture was an association of two persons to carry on a definite joint enterprise and to divide the profits and losses. This, in general, constitutes a partnership. (Civ. Code, sec. 2395. See *Gray* v. *Janss*

*Investment Co.,* 186 Cal. 642 [200 Pac. 401]; *Quinn* v. *Quinn,* 81 Cal. 14 [22 Pac. 264]; *Hendy* v. *March,* 75 Cal. 569 [17 Pac. 702]; *Westcott* v. *Gilman,* 170 Cal. 562, 569 [Ann. Cas. 1916E, 437, 150 Pac. 777], and *Sullivan* v. *Sullivan,* 122 Wis. 326 [99 N. W. 1022].) However, as we have stated, the result must be the same whether the relation between appellant and respondent was or was not that of copartners.

If the relation between appellant and respondent was such that a copartnership existed between them, then, if the strict letter of the Real Estate Brokers' Act must prevail, it may be gravely doubted whether a copartnership license, issued to the firm as such, was not an essential prerequisite to the validity of the negotiations which appellant and respondent conducted in bringing the buyer and seller together. The language of section 1 of the act is that it "shall be unlawful for any . . . copartnership to engage in the business, or to act in the capacity of, a real estate broker . . . without first obtaining a license therefor." There would seem to be some reason to believe that this language, when read in connection with other provisions of the act, means that when a copartnership is acting as a real estate broker its acts are illegal unless a copartnership license has been issued to it, and that the issuance of a license to each copartner as an individual real estate broker will not alone suffice to legalize acts done by them for their firm as copartners. Not only does the statute expressly declare that it shall be unlawful for any copartnership to engage in the business, or act in the capacity of, a real estate broker without first obtaining a license therefor, but it also is provided, in section 10, that "if the licensee be a copartnership, the license issued to *it* shall .entitle," etc. And in section 11 it is declared that "each . . . *firm* licensed as a broker . . . shall be required to have and maintain a definite place of business" in the state "which shall serve as his [its] office for the transaction of business"; and by section 11a that "each . . . *firm* . . . licensed as a broker . . . shall erect and maintain a sign on the premises wherein it is located his [its] place of business, on which shall be plainly stated that he [it] is a real estate broker." We confess that we are unable to perceive how a compliance with these regulatory provisions would be possible where the business is conducted by a firm to which no copartnership license has been issued, even though each of its

members may have procured the issuance to him of an individual license, particularly where, as here, the individual copartners have separate and distinct places of business.

[5] However, it is not necessary to decide whether a copartnership license is necessary in a case such as this, and we expressly refrain from doing so; for here one of the joint adventurers neglected to secure a license for the year 1922 until some time after the close of the negotiations which resulted in the sale of the property, i. e., until some time subsequent to the earning of the commission and the accrual of any cause of action therefor. Respondent's failure to secure such license until after the sale of the property had been fully negotiated and the stipulated commission had been earned rendered the transaction illegal and void, so far as it affects the parties to this action as real estate brokers, even if a copartnership license was not necessary. The performance of services jointly by both respondent and appellant constituted the consideration for the commission which the owner of the property agreed to pay. If any part of this consideration was illegal the entire contract was void. (Civ. Code, sec. 1608.) The rendition of services by respondent subsequent to January 1, 1922, was, as we have seen, unlawful because those services were rendered in direct violation of an express provision of the law and likewise in direct contravention of the express policy of the statute. (Civ. Code, sec. 1667.) It follows, therefore, that even if the parties to this action were not copartners in the strict sense of the term, and even if the procurement of a copartnership license in the firm name was not a necessary prerequisite, still, since appellant and respondent had agreed to render their services jointly, the contract for the payment of a commission became illegal and void after January 1, 1922; or, if the contract did not become illegal, the acts jointly performed by appellant and respondent subsequent to that date—acts which culminated in the sale of the property through their joint efforts and which constituted the consideration for the commission agreed to be paid them—were illegal, and no recovery of the commission could have been enforced by the parties to this action against the owner of the property. (See *Haas* v. *Greenwald, supra; McIver* v. *Clarke,* 69 Miss. 408 [10 South. 581]; *Hittson* v. *Browne,* 3 Colo. 304, and *Central Trust & S. D. Co.* v. *Respass,* 112

Ky. 606, [99 Am. St. Rep. 317, 56 L. R. A. 479, 66 S. W. 421].) This brings us to the second phase of the question: Can respondent recover his share of the commission from appellant notwithstanding the illegality of the transaction?

It may be conceded, for the purpose of this decision only, that the "commission" referred to in section 18 of the act means a commission paid by one real estate broker to another for services performed by the latter for the former in the way of assistance rendered in bringing buyer and seller together or in otherwise helping in the negotiations, and that it does not include money sought to be recovered by one partner, as his share of the partnership profits, in an action by him against a copartner who has received the profits. It also may be conceded, for the purpose of this decision only, that the "compensation" referred to in section 20 of the act means the compensation which is due from the principal to the broker, and that it does not include a partner's share of such compensation after it has been paid by the principal to one of the members of the brokerage firm which has effected the sale. It is claimed by respondent that if it be conceded, as it is, for the purposes of this decision, that there is nothing in either of these sections of the statute which directly inhibits the recovery by him of his share of the commission paid to his copartner, then he is entitled to such recovery notwithstanding the illegality of his acts in earning the commission. His argument is substantially this: The contract which he and appellant made with the owner of the property was fully executed on the part of the latter, who paid appellant the agreed commission notwithstanding the illegality of the transaction; where an illegal contract or an illegal transaction has been fully executed and one of the parties has the avails thereof, all the harm that can be done to public policy has been done, and therefore, so respondent argues, the party who has the avails can be compelled to pay them, or a proportionate share thereof, to the other party.

[6] We are unable to agree with respondent's reasoning. No principle of law is better settled than that a party to an illegal contract or an illegal transaction cannot come into a court of law and ask it to carry out the illegal contract or to enforce rights arising out of the illegal transaction. He cannot set up a case in which he necessarily must disclose the

illegal contract or the illegal transaction as the basis of his claim. In *Moore* v. *Moore,* 130 Cal. 110 [80 Am. St. Rep. 78, 62 Pac. 294], our supreme court quotes Judge Duncan in *Swan* v. *Scott,* 11 Serg. & R. (Pa.). 164, as follows: "The test whether a demand connected with an illegal transaction is capable of being enforced is whether the plaintiff requires the aid of the illegal transaction to establish his case. If the plaintiff cannot establish his case without showing that he has broken the law, the court will not assist him, whatever his claim in justice may be upon the defendant."

[7] If the issuance of a copartnership license was a necessary prerequisite to the legality of the firm transactions which appellant and respondent jointly carried on as copartners, then, since no such license was ever issued, or was ever even within the contemplation of the partners, the partnership contract was illegal from its inception; for in that case the partnership contract necessarily would involve the performance of illegal acts. And since respondent, in order to establish his case, necessarily must invoke the partnership contract, it follows that, if the issuance of a copartnership license was requisite, the court will not lend its aid to assist either party to the contract in an action against the other, notwithstanding the receipt by the latter of partnership profits, but will leave both parties where it finds them. (*Chateau* v. *Singla,* 114 Cal. 91 [55 Am. St. Rep. 63, 33 L. R. A. 750, 45 Pac. 1015]; *Moore* v. *Moore, supra; Woodson* v. *Hopkins,* 85 Miss. 171 [107 Am. St. Rep. 275, 70 L. R. A. 645, 38 South. 298]; *Kennedy* v. *Lonabaugh,* 19 Wyo. 352 [Ann. Cas. 1913F, 133, 117 Pac. 1079]; *McMullen* v. *Hoffman,* 174 U. S. 639 [43 L. Ed. 1117, 19 Sup. Ct. Rep. 839, see, also, Rose's U. S. Notes]; *Vandegrift* v. *Vandegrift,* 226 Pa. St. 254 [18 Ann. Cas. 404, 75 Atl. 365]; *King* v. *Winants,* 71 N. C. 469 [17 Am. Rep. 11].) In *Chateau* v. *Singla, supra,* our supreme court held that a partnership formed to carry on the business of letting furnished apartments for the purpose of prostitution is illegal, and that, therefore, one partner could not maintain an action against the other for an accounting of the rents collected by the latter.

The same result must follow if it be held that the issuance of an individual broker's license to each partner would satisfy the requirements of the statute, and that the issuance of

a copartnership license in the firm name was not a *sine qua non*. If, in a case like this, the issuance to each partner of an individual broker's license satisfies the requirements of the statute, then, even though the contract of copartnership may have been valid at its inception and during all of the balance of the year 1921, nevertheless the real estate transaction in which the partners engaged in January, 1922, and out of which grew the payment of the commission to appellant, was an illegal transaction, for the reasons stated in *Haas* v. *Greenwald, supra.* And with respect to that transaction respondent was *in pari delicto.* Indeed, he was, if anything, more guilty than appellant, for it was he who failed to make timely application for a license for the year 1922. According to respondent's testimony, it was agreed, when the partnership was formed, that the two should work together on each deal. This agreement, therefore, if we assume that a firm license was not essential, involved the implied undertaking on the part of each that at all times during the existence of the partnership he would maintain his status as a duly licensed real estate broker. But this respondent failed to do for the period of almost a month, and it was during this period that the partners initiated and consummated the deal out of which grew respondent's claim to a share of the commission paid to appellant. It was because of respondent's delinquency that the real estate transaction, in so far as it affected appellant and respondent as real estate brokers, was an illegal and void transaction.

Respondent testified that each of the transactions in which he and appellant jointly participated was treated separately, and that upon the termination of each "deal" the net profit was divided between them. Hence there was, in effect, a separate oral partnership contract as to each transaction. To entitle respondent to a recovery in this action he must rely upon the contract which he had with appellant to co-operate with the latter in this particular "deal" and to share equally in the commission to be earned, after deducting all expenses. But on January 1, 1922, this contract, as an agreement by two persons one of whom was not a licensed real estate broker, to jointly negotiate the sale of real property, became, and until the final consummation of the deal between the buyer and the seller, continued to be and was, through respondent's fault, an illegal contract—a contract

which involved the doing of an unlawful act. Respondent's cause of action grows directly out of this illegal contract between himself and appellant. Only through it and by proving it can he get at his share of the commission. There is nothing collateral, in respect of which, the partnership contract being out of the question, a collateral demand arises, as was the case in some of the decisions cited by respondent. "Here," as was said by the Master of the Rolls in *Sykes* v. *Beadon*, 11 Ch. D. 170; "you cannot stir a step but through that illegal agreement." In it respondent's case is inextricably entangled.

[8] Our conclusion from the foregoing is that whether the partnership contract be regarded as illegal from the beginning because of the failure of the joint adventurers to take out a partnership license, or whether it became illegal on and after January 1, 1922, by reason of respondent's failure to maintain his status as a duly licensed real estate broker, in either case the action must be regarded as one to enforce an illegal contract. The courts refuse to enforce such a contract, and permit the defendant to set up its illegality as a defense. While the defense is not an honorable one, yet the courts permit it to be set up even though in doing so the defendant may allege his own moral turpitude. Violators of the law who are parties to such illegal contracts are repudiated by the courts because of the great supervening principle of public policy involved, without reference to the attitude which one of the parties may occupy to the other, where both are *in pari delicto.* As pungently put in *McMullen* v. *Hoffman, supra:* "The court refuses to enforce such a contract, and it permits defendant to set up its illegality, not out of any regard for the defendant who sets it up, but only on account of the public interest. It has been often stated in similar cases that the defense is a very dishonest one, and it lies ill in the mouth of the defendant to allege it, and it is only allowed for public considerations and in order the better to secure the public against dishonest transactions. To refuse to grant either party to an illegal contract judicial aid for the enforcement of his alleged rights under it tends strongly towards reducing the number of such transactions to a minimum."

The decisions relied upon by respondent, and now to be adverted to, are clearly distinguishable from this case. In

*Walker* v. *Kremer,* 29 Fed. Cas. No. 17,076, the complainant sued upon an account stated, and the action was based not upon the illegal contract, but upon a collateral contract, namely, the implied agreement to pay the balance shown to be due by the account stated. In *Penn Mut. L. Ins. Co.* v. *Bradley,* 66 Hun, 635, 21 N. Y. Supp. 876, the complaint alleged, and the answer admitted, facts which showed that the contract was not an illegal one. In *Decell* v. *Hazlehurst etc. Co.,* 83 Miss. 346 [35 South. 761], complainant sought an accounting from its agent for moneys received by him in that part of complainant's business which was confessedly legal. [9] It is well established that where there have been both legal and illegal transactions the defendant cannot set up, as a defense to an action for an accounting of the legal transactions, the fact that some other transactions are illegal, especially where the transactions are distinct and not so connected as to require the court to pass upon those which are illegal. (*Central Trust & S. D. Co.* v. *Respass, supra.* See, also, note to *Fryer* v. *Harken,* 23 L. R. A. (N. S.) 485.) *Baldwin* v. *Potter,* 46 Vt. 402, is more nearly but not quite in point. It was a case where an agent, in the course of his agency, received from third parties for his principals the proceeds of illegal contracts to which his principals were parties, and who, therefore, were *in pari delicto.* The agent likewise was a participant in the making of the illegal contracts, and he, therefore, also was *in pari delicto.* It was held that the agent could not set up the illegality of the contracts to defeat a recovery by his principals of the moneys which he had received for the latters' use. This Vermont case, though it is in line with a number of decisions from other jurisdictions which support the doctrine there announced, is opposed by such well-reasoned cases as *Woodson* v. *Hopkins, supra,* where the authorities on both sides of the question are collected and exhaustively analyzed. See, also, 15 Am. & Eng. Ency. of Law, 2d ed., pp. 1009, 1010. However, the Vermont case is not strictly in point, for the reason that here both appellant and respondent were principals in their contract with the owner of the property, and the money was paid to appellant, not as an agent to receive it for respondent, but as one of the principals to that contract. In *Woodson* v. *Hopkins, supra,* the court says: ''The other misconception is in confusing the case of a suit by one

of two parties to an illegal contract against the other with a suit by one of the parties against a third party, *no way connected with the illegal contract* [italics ours], to collect money paid by the other party to the illegal contract, which has been executed, to such third person for the use of the party suing. This principle is clearly stated at page 1007, 2 Am. & Eng. Ency. of Law, paragraph 9, and it is stated there, with great exactitude of statement, that the reason that the third person cannot defend an action by the latter is 'that in such a case the action is not based on the illegal contract, but, instead, upon the independent contract of such third person to deliver over the property received by him.' '' We may add that the author of the article in the American & English Encyclopedia of Law states with equal exactitude the rule which obtains where, as here, one partner is suing another for his share of the profits of an illegal transaction. The author says: ''Where an illegal contract entered into by a partnership as a party of the one part is fully executed, and profits arising therefrom come into the hands of one of the partners, the *general rule* [italics ours] seems to be that he will not be compelled to account to his copartners for their share of such profits; and where the agreement of partnership is illegal on account of the consideration moving between the partners, or the character of the business to be transacted, the court will not, if business has been transacted and the profits of the transaction have been received by one partner, compel him to account to the others for their share of the profits. In *some cases* [italics ours], however, the proposition has been advanced that if the illegal purpose of the partnership has been accomplished the courts may direct a division of the profits.'' (15 Am. & Eng. Ency. of Law, 2d ed., p. 1011.) Referring to the last sentence in this quotation, the court in *Woodson* v. *Hopkins, supra,* says of it that ''the text repudiates this as unsound.'' And the Mississippi court is right. The doctrine referred to in the last sentence of the quotation is unsound. The doctrine which has the support of reason and the weight of authority, and the one which has been recognized by our own supreme court in such cases as that of *Chateau* v. *Singla, supra,* is the doctrine which is set forth in the preceding sentence of our quotation from the American & English Encyclopedia of Law.

[10] It is a generally recognized doctrine that if, after an illegal contract has been executed, the parties thereto make a new one settling their rights as between themselves, the latter contract governs their relations and the original becomes *functus officio* and no longer is to be reckoned with. That was the doctrine announced and applied by the district court of appeal in *Johnson* v. *Davidson,* 54 Cal. App. 251 [202 Pac. 159]. That doctrine, however, is not applicable to the facts of this case. Here respondent is seeking to enforce a contract which he says he had with appellant. As between the parties to this action that contract is yet executory, and appellant has repudiated it.

We do not deem it necessary to prolong this discussion by referring further to specific cases. It is sufficient to say that the better reasoning and the great weight of authority condemns the doctrine of an implied promise in the matter of the division of the profits of an illegal contract between partners or joint adventurers who are *in pari delicto.*

The judgment is reversed.

Works, J., concurred.

CRAIG, J., Concurring.—I concur, but am not prepared to say that where two brokers engage in a partnership for the sale of a single unit of property and each at the time holds a broker's license which he retains throughout the transaction, the law requires these brokers to secure a license in the name of a firm to be organized for that particular transaction. This point is in no way involved in the instant case, and I therefore expressly reserve judgment upon it.