Flugel, Appellee, *v.* Meek, Appellee; The Ohio Casualty Ins. Co., Appellant.

(No. 7887—Decided July 12, 1954.)

*Mr. Ralph E. Clark* and *Mr. Ralph E. Clark, Jr.,* for appellee.

*Mr. Sanford A. Headley,* for appellant.

MATTHEWS, P. J. This is an action against a licensed real estate broker and the surety upon the bond which he gave under the provisions of Section 6373-35, General Code (Section 4735.12, Revised Code), to recover the amount paid to the broker in a transaction involving the purchase and sale of certain real estate. The case was submitted upon an agreed statement of facts between the plaintiff and the surety. The trial court found in favor of the plaintiff and entered judgment against the surety for the full amount paid by the plaintiff to the defendant broker. By agreement of the parties, the action against the defendant broker was allowed to remain pending. This appeal is by the surety from that judgment.

That the defendant J. Finley Meek was a duly licensed real estate broker at the time and that the defendant The Ohio Casualty Insurance Company, hereinafter referred to as appellant, was surety upon his bond, is not disputed. It is admitted that the defendant Meek was, at the time, engaged in the business of a licensed real estate broker and held himself out to the public as such.

On June 28, 1951, the defendant Meek and the plaintiff signed a written document with a printed heading, entitled, "Contract To Purchase." It is a printed form, prepared by the Cincinnati Real Estate Board, containing blank spaces for insertion of specific provisions. Who presented this form and who filled in the specific provisions does not expressly appear, but it is a fair inference that the defendant broker did so. It purports to be an offer by the plaintiff "to purchase from the owner through you as his agent—lot No. 1 of J. Finley Meek's Subdivision—for the sum of thirteen thousand nine-hundred dollars," $1,500 of which was payable in cash. This was followed by the statement, "balance payable subject

to a land contract for a period of three years at 5 per cent interest. Said contract is to be paid in monthly installments of $125 per month. Purchaser may at any time prior to the three years pay off said land contract without any penalty." This was followed by a provision requiring a conveyance by general warranty deed on or before 120 days from date. The offer closed with this provision: "I/we hereby deposit one thousand five hundred dollars ($1,500) as above provided with J. Finley Meek, realtor, as agent for the seller, to apply on the purchase price which is to be retained by the agent until the terms of this contract have been complied with."

This offer was signed by the plaintiff on a line at the end.

Following the plaintiff's signature is a paragraph in print in which it is recited that the offer "submitted to me/us by you as my/our agent" is accepted and that the established commission would be paid and authorizing the application of the cash payment to such commission. There was a line for a signature following this paragraph, but no signature appears thereon.

At the bottom of the form is an acknowledgement of the receipt of "one thousand, five hundred dollars ($1,500) as above provided." On the line below is the signature, "J. Finley Meek, Realtor," and immediately below the line is the legend, "Name of Broker."

It is apparent that this offer is indefinite and ambiguous. The provision for a conveyance by warranty deed in 120 days is inconsistent with the provision for the payment of $125 per month upon a land contract. It would seem that the parties contemplated that this contract would or might be followed by another contract (a land contract) for the payment of the purchase price in monthly installments. It is suggested

that in the meantime the vendor was obligated to construct a residence on the lot. However, that does not appear in the record, although color is lent to the suggestion by a letter of April 25, 1952, in which defendant Meek notified the plaintiff that, owing to a change in the interpretation of a governmental regulation, he would be unable to finance a house on a land contract and suggested that the plaintiff should seek other means of financing.

While it is clear that the plaintiff intended to enter into a contract for the purchase of a lot of land and paid $1,500 to the defendant Meek to apply on the purchase price, the agreed statement of facts leaves it very doubtful whether the parties had reached a final agreement as to the specific terms. At any rate, the parties did not treat either the provision for paying $125 per month or the provision for a conveyance within 120 days as having become operative, and, finally, on defendant Meek's refusal to finance the building of a house, as he had agreed, plaintiff demanded the return of the $2,000 which he had paid. On Meek's failure to comply with the demand, this action was filed.

At the time the payment of $1,500 was made, the penalty in the bond of the appellant was $1,000. At the time a later payment of $500 was made, the penalty in the then current bond was $5,000. Because of this situation, it is conceded by the plaintiff that the liability of the appellant on account of the first payment is limited to $1,000 and interest, and, for that reason, the judgment must be modified by reducing it to conform to the limit prescribed in the bond.

But the appellant denies all liability. It asserts that its obligation under the statute and the bonds is limited to transactions in which the defendant Meek was in fact acting as agent or broker for another and

does not apply to a transfer of his own real estate, and the admitted fact is that Meek was the owner of the lot. In such a situation, it asserts that the fact that the owner was also a licensed real estate broker is entirely immaterial.

On the contrary, the plaintiff contends that, regardless of the actual fact, the defendant Meek dealt with him as though he were representing another and held himself out to him as a licensed real estate broker in the transaction, and that, therefore, he and his surety are liable.

As more fully developed later, we agree with this contention of the plaintiff. We are of the opinion that members of the public, in the absence of knowledge to the contrary, have a right to accept the representations of a licensed real estate broker as to the capacity in which he is acting in the transaction, that this representation may be by either words or deeds, and that the surety upon his bond is bound by such representations.

To decide in which class this case falls—whether defendant Meek assumed the guise of a licensed real estate broker in this transaction—perhaps a more detailed analysis of the facts appearing in the agreed statement is advisable.

It will be noted that the offer is not addressed to defendant Meek; that it is addressed to the owner through Meek as his agent; that the cash payment was deposited with Meek as agent of the owner; and that Meek receipted therefor as realtor and not as owner. All through the offer are found references indicating that Meek was acting in a representative capacity. At no place is he referred to as the owner of the lot. It is true that the lot is described as being located in a subdivision known as "J. Finley Meek's Subdivision," which might suggest inquiry, but is no evidence of

ownership. It only identifies the property. At any rate, the trial court found in favor of the plaintiff, and by so doing must have found (if necessary to sustain its finding) that the plaintiff, without knowledge to the contrary, relied in good faith upon the representations of the defendant Meek that he was acting as a licensed real estate broker for an unnamed owner other than himself. We are of the opinion that there is sufficient data in the agreed statement to justify that inference.

Appellant assumes that it is in a position to assert the admitted fact that J. Finley Meek was the owner of the lot which was the subject matter, and points out that he was in fact acting for himself and not as the agent of another, and, therefore, was not acting as a licensed real estate broker for whose faithful performance of duties it had become surety. Counsel point to Section 6373-25, General Code (Section 4735. 01, Revised Code), defining "real estate broker" as "any person * * * who for another and for a fee * * * sells * * * or offers * * * to negotiate the sale * * * any real estate," and particularly to the provision in the same section that the term, "real estate broker," as therein defined, should not be construed to include any person who sells or negotiates for the sale of his own real estate or interest therein. From these postulates, the conclusion is reached that the terms of the bond are inapplicable to the transaction and therefore the appellant is not liable.

But this solution disregards the appearance of the transaction produced by the representations of the principal in the bond, that is, by J. Finley Meek. Can either the principal or his surety ignore the appearance of a transaction created by the false representations of the principal? We are of the opinion that on general principles of estoppel, defendant Meek can-

not be heard to repudiate the capacity in which he appeared to act, and that the surety upon his bond is also bound by that estoppel. There is no suggestion in the agreed statement that the plaintiff knew that the defendant Meek was acting in his own, and not in a representative, capacity, or that he did not take him at his word. If the contrary was the fact, if defendant Meek notified the plaintiff that he was the owner and acting as such, after having represented the contrary, we believe the burden of going forward with such evidence was upon appellant. That the plaintiff relied on the representation is manifest. There was no other representation or fact in the record upon which he could rely. Any doubt on that score is resolved in plaintiff's favor by the finding of the trial court.

The Real Estate Brokers' Act creates a confidential relationship between such brokers and those with whom they deal. Therefore, a duty of disclosure was imposed on the broker. That fact, and the fact that he had created a situation justifying the conclusion that he was acting as a licensed broker in this transaction required an explanation. In the absence of explanation, a fraud was perpetrated upon the plaintiff, in that he was allowed to suppose that he was making a deposit of money with a licensed, bonded, broker, and not with defendant Meek as owner.

We have been cited to no Ohio case bearing any close analogy to this case. Appellant places some reliance upon *Ruby v. Hardin*, 33 Ohio Law Abs., 544, decided by this court, but its inapplicability is made manifest by pointing out that there was no transfer or negotiation for such a transfer in the transaction. The contract involved was for the construction of a building on land owned at all times by the plaintiff. The only common factor is that the defendant was a licensed real estate broker in each case.

The case of *Mapes* v. *Foster*, 38 Wyo., 244, 266 P., 109, bears a striking similarity to this case. Wyoming had a law regulating real estate agents and requiring the giving of a bond as a condition to securing a license, conditioned on accounting for all funds entrusted to them. Foster was a licensed real estate agent and the Southern Surety Company was the surety upon his bond. Foster represented to Mapes that he was acting for an unnamed widow who owned a homestead right. Mapes entered into an oral contract to buy the homestead right and paid Foster $600 therefor. The transfer was not made and Mapes demanded that Foster repay him. On his failure, the action was brought by Mapes against Foster and the Southern Surety Company to recover the amount Mapes had paid to Foster. Southern Surety Company defended on the ground "that the defendant Edwin B. Foster, in and about the transaction complained of in the petition herein, was acting for and on behalf of himself alone, and that the plaintiff at all of the times complained of, had full knowledge of the fact that the defendant Foster was so acting * * *."

At the trial, the plaintiff offered to prove "that the defendant Foster represented to plaintiff that he was agent for the widow lady, and that he was working for this widow lady in the sale of the real estate." Southern Surety Company objected to this testimony and the court sustained the objection. The plaintiff introduced evidence that Foster did not represent the unnamed widow, that he and the unnamed widow had conflicting claims to the homestead, and that Foster later filed an action contesting the widow's claim, but lost the action. Judgment was entered for Southern Surety Company. On appeal to the Supreme Court, that court stated the issue to be:

"The principal and controlling questions which

thus arise in the case are, first: Were these admissions and representations of Foster admissible in evidence against the surety? and, second, if they were so admissible: What effect shall be given them as against that party?"

Upon the first question, the court held that Foster's statements that he was acting as agent were clearly admissible against him as an admission against interest, and then considered whether it was admissible against Southern Surety Company, saying in part on that subject:

"It being clear then, that the representations of Foster, concerning the capacity in which he dealt with the plaintiff, were admissible against him, we are led to consider the rule applicable where declarations of a principal admissible against him are offered in evidence in a suit wherein both the principal and surety are sued jointly, as in the case at bar.

"In 2 Brandt on Suretyship (3d Ed.), Sec. 795, it is said:

"'When the suit is against the principal and surety jointly on a joint or joint and several obligation, an admission or declaration of the principal, which is competent evidence against him, is also generally held to be competent against the surety.'

"In Stearns on Suretyship (3d Ed.), page 300, it is said:

"'Where the principal and surety are sued jointly, the admission of the principal being competent against himself cannot be excluded, and being admitted as against him, will generally be considered against the sureties.'"

After concluding that Foster's statements were admissible against Southern Surety Company, the court considered the effect of such statements upon the liability of the surety. The authorities holding that the

surety was bound thereby were reviewed at great length, and then the court stated its own view in this language:

"Clearly, Foster would be estopped from denying the truth of his statements.

"If Foster could not set up a defense of this sort, why should his surety be permitted to do so? This is not a defense personal to the surety. In making it, the surety was undertaking to establish the capacity in which Foster acted. The surety really represented him in making the defense. Should the surety have greater rights than he—the claim arising because of his conduct and being the same against both him and his surety? Both are sued on the same bond, too, which both signed. Should the surety be permitted to establish the fact contrary to Foster's representations, to the hurt of another, when Foster himself would not be allowed to do that? We are not inclined to think so. A contrary view would be not only to disregard the principles announced by the authorities cited above, but in large measure to render the act licensing and bonding real estate agents passed by our Legislature quite valueless, so far as protecting the public is concerned. It must be borne in mind that such acts are passed for the express purpose of affording the public protection in the handling by agents of important and valuable transactions relating to real property. *Firpo* v. *Murphy,* 72 Cal. App., 249, 236 P., 968. Laws are to be construed in the light of the obvious purpose for which they are enacted."

The Wyoming Act contained a provision similar to the Ohio provision, excluding from the operation of the Act transactions by an owner relating to his own real estate. Referring to that provision, the court stated that it regarded it as "administrative merely," and then said:

"The clause of the statute reading, 'the provisions of this act shall not apply to any person, firm or corporation who shall perform any acts aforesaid with reference to property owned by such person, firm or corporation, or the purchase of real estate for the use of such person, firm or corporation,' seems to us to be administrative merely. It does not release a liability which other principles of law establish. The clause simply excuses one who deals for himself from taking out a license and giving bond, and, of course, would relieve from the criminal punishment provided by the act for its violation. In this connection it is to be observed that the statute declares that a person who 'offers for sale, buys or offers to buy, or negotiate the purchase or sale * * * of real estate * * * for others as a vocation,' is a real estate agent. And a single act is asserted by the statute to constitute one as such. There does not seem to be an exception in the law, providing that one is not a real estate agent, if he *offers* real estate for sale for another, when the fact is that either he or someone else whom he does not represent actually, owns the land. The statute is quite broad enough to include his representations on the point, whether true or false, and thus construed the public in dealing with such an agent will be protected."

The reasoning in these quotations is equally pertinent to the facts in this case. It is dispositive of the case.

While we have treated this case on the assumption that knowledge by the plaintiff that defendant Meek owned the land, which was the subject of negotiation, would bar a recovery, we, nevertheless, agree with plaintiff's counsel that under Section 6373-25, General Code, where the licensed real estate broker, as in this transaction, holds himself out as such, the ownership of the real estate and the knowledge or lack of knowl-

edge on the part of the party dealing with him are not material. Such person is justified in dealing with him according to the character chosen by him, and he is under no duty to question or inquire about it, or make any investigation to determine what, if any, record or concealed interest in the real estate may be owned by him. Nor is he obliged, on obtaining information that the broker is also the owner, to treat him from that time on as owner and not as broker. Of course, if it appeared that the plaintiff had conspired with the broker to defraud the surety, a different question would be presented.

The defendant Meek, in the case at bar, was a licensed real estate broker. Without any collusion with the plaintiff, he held himself out and dealt with the plaintiff as a licensed real estate broker. Under such circumstances, it seems to us that the spirit and letter of the law requires that he and his surety should bear the responsibility of a licensed real estate broker.

For these reasons, the judgment will be modified, as heretofore indicated, and as modified, affirmed.

*Judgment modified and affirmed as modified.*

MATTHEWS, P. J., and HILDEBRANT, J., concur.
Ross, J., concurs in the judgment.