Filed 5/10/23  P. v. Renselaer CA2/4

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>EDWARD RENSELAER,<br><br>    Defendant and Appellant. | B318492<br><br>(Los Angeles County<br>  Super. Ct. No. SA101753) |

APPEAL from a judgment of the Superior Court of Los Angeles County, William L. Sadler, Judge.  Vacated and Remanded.

Sarah M. Javaheri, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven D. Mathews and Rama R. Maline, Deputy Attorneys General, for Plaintiff and Respondent.

———————————————

Appellant Edward Renselaer was convicted by a jury of felony assault with a deadly weapon and a misdemeanor charge for leaving the scene of an accident, following a "road rage" incident. The trial court sentenced appellant to a term of four years in state prison, suspended with formal probation.

On appeal, appellant contends that his case should be remanded for resentencing based on recent amendments to Penal Code section 1170, by Senate Bill No. 567 (SB 567) and Assembly Bill No. 124 (AB 124). We agree remand is necessary under SB 567, as we cannot be confident on this record the trial court would have imposed the same term had it been aware of the requirements of SB 567. In light of our determination, we need not address appellant's AB 124-related argument. Upon remand, the trial court may consider the applicability of AB 124.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *The People's Evidence*

On October 14, 2019, at approximately 7:00 p.m., Christian Zavala was driving his Toyota Camry home from work on Sawtelle Boulevard in Culver City. A white Cadillac Escalade, driven by appellant, veered into Zavala's lane without signaling and Zavala had to slam on his brakes to avoid hitting the Escalade. Zavala honked his horn.

In response to Zavala honking his horn, appellant slammed on his brakes and stopped in the middle of the road for about 15 to 20 seconds. Appellant then drove away.

Several blocks further, at the intersection of Sawtelle and Sepulveda Boulevard, Zavala saw appellant's Escalade in the left turn lane; Zavala was in the middle lane. When the light turned green, Zavala drove past

2

appellant, took a picture of the Escalade with his phone, and called out, "Learn how to drive, asshole."

After driving through the intersection, Zavala turned right onto the next street, Hannum Avenue. Zavala noticed that appellant was following him. As appellant's Escalade came close to Zavala, Zavala tapped on his brakes. Appellant stopped short of Zavala's car. Zavala then heard appellant "rev" his engine, and appellant "barreled" into Zavala's car, pushing his car three to four car lengths. Zavala's car struck a parked car and then hit a second car, at which point he became wedged in and could not be pushed any further. Zavala's bumper was pushed in and the rear trunk popped open.

Zavala exited his car, took a photograph of appellant's Escalade,[1] and walked to appellant's passenger window. A teenage girl was in the front passenger seat. Zavala said, "what's your problem? Look what you've done." Appellant and Zavala cursed at each other. Appellant then drove away. Appellant did not provide his name, insurance information, or driver's license. Zavala called the police.

Zavala paid $15,000 for his car in 2012. Zavala's car was "totaled."

B.    *Eyewitness Testimony*

On October 14, 2019, at approximately 7:00 p.m., Judy Hughes was at Sawtelle and Hannum in Culver City near Menchie's Ice Cream Parlor. Hughes was locking her car when she saw a small blue car come around the corner very fast. About seven to twelve seconds later, a large white Escalade came around the corner. The blue car stopped, and the white Escalade stopped close behind the blue car. The driver of the Escalade revved his

---

[1]    The photo taken by Zavala shows a gap between the two cars; Zavala explained that appellant had reversed after he hit him.

3

motor, and then rammed the back of the white car, pushing it.

Hughes called 911. Hughes said that a big white truck rammed into another car, forcing the car into parked cars.

C.    *Defense Evidence*

Appellant did not testify on his own behalf.

1.  *Testimony of Appellant's Daughter/Passenger*

Ashley Renselaer is appellant's daughter. On October 14, 2019, at approximately 7:00 p.m., Ashley was 14 years old. Appellant and Ashley were driving in a white Escalade. As Ashley spoke to her father, she heard something hit the windshield. A dark-colored car sped off. Appellant followed the car.

Appellant came around the corner, and Ashley saw brake lights on the other car. Appellant put on his brakes and skidded a bit, but did not hit the other car. The other car screeched and hit some parked cars, and stopped a few feet away. The driver exited the car, angry and screaming, and banged his fist on the hood of appellant's car. The driver then came around to Ashley's side of the car, screaming and cursing and taking pictures. Appellant tried to talk to him, but he was very angry. Appellant left.

Ashley stated that due to a medical condition, appellant has trouble with his feet and difficulty walking.

2.    *Medical Testimony*

Dr. Ryan O'Connor, an emergency medicine doctor, reviewed appellant's medical records. Appellant has peripheral neuropathy, which affects his ability to walk. Appellant also had decreased sensations,

numbness, and problems with knowing where his body was in space. The condition could have affected appellant's ability to drive and caused him to press on both the gas and the brake pedals at the same time, or not be able to tell the difference between the two pedals.

### 3. *Forensic Expert*

Babak Malek, a forensic engineer, examined appellant's 2011 Cadillac Escalade. Malek also downloaded contents of the Event Data Recorder or "Black Box." Appellant's car had no damage consistent with hitting another car. There were no dents, chips, or scuffs to the front of appellant's vehicle.

Malek also saw no indications of an accident in the Black Box data. The Black Box records airbag deployments and non-deployment events. The latter includes impacts that are not enough to trigger an airbag deployment, but cause a change in velocity of more than five miles per hour. There were no events recorded in the black box.

### D. *Charges and Jury Verdict*

Appellant was charged by an amended information with a felony count of assault with a deadly weapon (Pen. Code,[2] § 245, subd. (a)(1); count 1), and misdemeanor count for leaving the scene of an accident, resulting in property damage (Veh. Code, § 20002, subd. (a); count 2).

A jury found appellant guilty of both counts. The trial court sentenced appellant to the upper term of four years, but suspended sentence. Appellant was placed on formal probation for 24 months and ordered to serve 180 days in jail with credit for 104 days.

---

[2] All further statutory references are to the Penal Code unless otherwise specified.

**DISCUSSION**

Appellant contends SB 567 and AB 124 apply retroactively to his felony count conviction and require this case be remanded for resentencing. Respondent concedes both provisions apply retroactively to appellant's case, but argues remand is not required under either provision.

We conclude a remand for resentencing is required under SB 567, and thus need not address appellant's AB 124 contention.

A. *Proceedings in Trial Court*

After appellant was found guilty on both counts, the trial court set the matter for sentencing and informed the parties it was considering whether it could "legitimately" use as a sentencing factor in aggravation "the fact that [appellant] called his teenage daughter to lie for him." The court added: "I want to know about whether I can use that in aggravation because I consider that an aggravating circumstance at this time." The court then set the sentencing hearing for December 29, 2021.

Prior to sentencing, the parties submitted sentencing memoranda.

1. *Prosecutor's Sentencing Memorandum*

In his sentencing memorandum, the prosecutor pointed out count 1, assault with a deadly weapon, carries a sentence of two, three, or four years, and recommended the trial court impose the mid-term sentence of three years. (§ 245, subd. (a)(1).) The prosecutor then identified several aggravating factors, in order of severity. The most serious factor was appellant suborned perjury from his daughter.

6

The prosecutor argued, without elaboration, Ashley's testimony was "completely different than the statement she gave to the public defender's investigator in early 2020" and the court "can and should draw the reasonable inference" appellant knew his daughter would "lie for him" when called as a defense witness.

The other aggravating factors identified by the prosecutor included appellant's conduct endangered his daughter and appellant had a previous criminal history. The prosecutor identified the following factors in relation to appellant's criminal history: (1) appellant's prior convictions were numerous or of increasing seriousness; (2) appellant had served prior prison terms; and (3) appellant's prior performance on probation was unsatisfactory. The prosecutor noted the last factor was the weakest because appellant successfully completed probation for his most recent felony conviction, which occurred in 2009. The prosecutor also observed appellant's instant conviction, suffered at appellant's current age of 65 years, was his "first serious felony."[3] The prosecution stated there were no factors in mitigation.

### 2.  *Appellant's Sentencing Memorandum*

Appellant's counsel submitted a sentencing memorandum on his behalf, requesting the court grant a probationary sentence. Counsel pointed out appellant's last criminal conviction was over a decade ago, he had no prior acts of violence, and submitted a number of letters attesting to appellant's good character.

Counsel also noted the court had previously inquired as to whether it could consider the daughter's testimony as a basis for concluding appellant

---

[3] The prior convictions, identified in the probation report, consisted of theft and fraud-related offenses, the last of which appellant suffered in 2009.

suborned perjury. On this point, counsel first stated it had been his decision to call appellant's daughter to the stand, in light of appellant's criminal history. Counsel further pointed out the prosecutor did not identify what, if any, false testimony Ashley gave on the stand, but surmised it had to do with her testimony that appellant never hit Zavala's car, as she was cross-examined on this point based on a purportedly contradictory statement she gave to the defense investigator. Counsel stated the jury clearly grappled with this issue since it expressly asked the court whether contact between the two cars was necessary for the charge of assault. The court told the jury contact was not necessary, and the jury thereafter returned its verdicts.

### 3. *Sentencing Proceedings*

During the December 29, 2021 sentencing hearing, the trial court imposed the upper term of four years on count 1, suspended with a term of formal probation. The court identified the aggravating and mitigating circumstances as follows:

"I see a couple of issues regarding mitigation. Number one, there was a significant break in criminal activity to when he was younger to when he is older. He has no criminal history that would indicate violent conduct on his behalf.

"He does have some disabilities; not enough to act as a defense in this case.

"There are also some aggravating factors. And I think among the biggest aggravating factors that I see is . . . you put up your daughter to lie—We heard both statements, the statements that she made to the investigator and the statement she testified to . . . . [¶] The jury came back and they reached the verdict they did. . . . [¶] . . . What I also don't understand is

8

getting ready for trial knowing what your options are, and deciding that I am going to have my daughter who is then 14 at the time and now 16 testify for you, right? . . . [¶] . . . Instead of taking your lumps based upon the evidence. That I don't understand at all. So, yeah, I think that is an aggravating factor.

"I think it's an aggravating factor that is worthy of a prison sentence. The question that I have in this case is whether imposing a high term prison sentence and placing [appellant] on probation . . . would be appropriate."

After discussing the matter with the prosecutor (who objected to probation), the court imposed an upper term sentence of four years in state prison, suspended with a formal term of probation.

B.      *Relevant Law*

   1.      *Law Prior to Enactment of SB 567*

      a.      *Cunningham v. California*

In *Cunningham v. California* (2007) 549 U.S. 270 (*Cunningham*), the United States Supreme Court explained "the Federal Constitution's jury trial guarantee proscribes a sentencing scheme that allows a judge to impose a sentence above the statutory maximum based on a fact, other than a prior conviction, not found by a jury or admitted by the defendant." (*Id.* at pp. 274–275.) The court then held California's procedure for selecting upper term sentences under former section 1170, subdivision (b), violated the defendant's Sixth and Fourteenth Amendment right to a jury trial because it gave "to the trial judge, not to the jury, authority to find the facts that expose a defendant to an elevated 'upper term' sentence." (*Cunningham*, *supra*, 549 U.S. at p. 274.)

9

At the time, California's determinate sentencing law (DSL), which specifies three terms of imprisonment by statute for most offenses, provided "'the court shall order imposition of the middle term, unless there are circumstances in aggravation or mitigation of the crime.'" (*People v. Sandoval* (2007) 41 Cal.4th 825, 836 (*Sandoval*), quoting former § 1170, subd. (b).) The DSL further required facts relevant to this sentencing choice were to be determined by the court, need to be proved by a preponderance of the evidence, and the court must set forth its reasons for departing from the middle term. (*Sandoval, supra*, 41 Cal.4th at p. 836.)

In deeming such a procedure violative of Sixth Amendment principles, the *Cunningham* court explained although a trial judge can ordinarily exercise his or her discretion to select a sentence within a statutorily-defined range without running afoul of the Sixth Amendment, the "maximum term" under California's DSL was, in fact, the middle term. The Court so concluded because the middle term, as defined under California law, was the maximum term that could be imposed on the jury's verdict alone, while any departure from that term required additional, and specified, fact-finding. (*Cunningham, supra*, 549 U.S. at pp. 278, 288–289; *Sandoval, supra*, 41 Cal.4th at pp. 836–837.)

### b. *Black and Sandoval*

In *People v. Black* (2007) 41 Cal.4th 799 (*Black II*), the California Supreme Court held "imposition of the upper term does not infringe upon the defendant's constitutional right to jury trial so long as one legally sufficient aggravating circumstance has been found to exist by the jury, has been admitted by the defendant, or is justified based upon the defendant's record of prior convictions." (*Id*. at p. 816.)

10

"By the same reasoning" the court in *People v. Sandoval, supra*, 42 Cal.4th 825, held "if a reviewing court concludes, beyond a reasonable doubt, that the jury, applying the beyond-a-reasonable-doubt standard, unquestionably would have found true at least a single aggravating circumstance had it been submitted to the jury, the Sixth Amendment error properly may be found harmless." (*Id.* at p. 839.)

The *Black II/Sandoval* conclusion that only one aggravating factor must be established in accordance with Sixth Amendment principles was tied to the fact that "[u]nder California's determinate sentencing system, the existence of a single aggravating circumstance is legally sufficient to make the defendant eligible for the upper term." (*Black II, supra*, 41 Cal.4th at p. 813; cf. p. 815, citing *People v. Osband* (1996) 13 Cal.4th 622, 728.)

### c. *Legislative Amendments to Section 1170 in Response to Cunningham*

In response to *Cunningham*, the Legislature passed a bill that amended section 1170, subdivision (b) by eliminating the requirements of judicial fact-finding to impose a lower or upper term and granting judges the discretion to select any term within the statutory range. (Stats. 2007, ch. 3, § 3 (Sen. Bill No. 40).)

### 2. *Enactment of SB 567*

Senate Bill No. 567 took effect on January 1, 2022. It amended section 1170 "to specify that, when a sentencing court chooses a term from a statutory triad, the chosen term shall not exceed the middle term, unless the facts supporting the aggravating circumstances are (1) established by the defendant's stipulation to them, (2) proven to a jury (or to a court, if jury is

waived) beyond a reasonable doubt, or (3) based on prior convictions evidenced by a certified record of conviction." (*People v. Jones* (2022) 79 Cal.App.5th 37, 44; Stats. 2021, ch. 731, §§ 1.3, 3(c), adding § 1170, subd. (b)(1)-(3), by amendment.)

The parties agree, as do we, the amendments to section 1170 made by S.B. 567 retroactively apply to the upper-term sentence imposed on appellant for count 1. (See *People v. Garcia* (2022) 76 Cal.App.5th 887, 902.) However, the parties disagree as to whether remand for resentencing is necessary.

### 3. *Harmless Error Tests Post-SB 567*

Published California appellate decisions to consider the retroactive application of the current version of section 1170, subdivision (b), uniformly recognize the failure to submit an aggravating circumstance for determination by a jury does not require reversal where the error is harmless. However, they differ on the correct test to apply in making such a determination.

#### a. *Flores Test*

In *People v. Flores* (2022) 75 Cal.App.5th 495 (*Flores*), the court of appeal concluded "'if a reviewing court concludes, beyond a reasonable doubt, that the jury, applying the beyond-a-reasonable-doubt standard, unquestionably would have found true at least a single aggravating circumstance had it been submitted to the jury,' the error is harmless." (*Id.* at p. 500; see also *People v. Salazar* (2022) 80 Cal.App.5th 453, 465 [concluding, in a split decision, that "*Flores* is the standard governing appellate review"], review granted Oct. 12, 2022, S275788.)

12

b. *Lopez Test*

In *People v. Lopez* (2022) 78 Cal.App.5th 459 (*Lopez*) the court of appeal concluded the standard articulated in *Flores* was incomplete and instead, to find harmless error, a reviewing court must conclude beyond a reasonable doubt a jury would have unquestionably found true beyond a reasonable doubt *every* aggravating factor upon which the trial court relied at the time of sentencing. (*Id.* at p. 466.) If so, the error is harmless; if not, the court considers whether it is reasonably probable the trial court would nevertheless have exercised its discretion to select the upper term "based on a single permissible aggravating factor or on some constellation of permissible aggravating factors," rather than all of the factors on which it previously relied. (*Lopez*, at p. 468; see *id.* at p. 467, fn. 11.) (*Lopez,* at pp. 463, 466–467; accord, *People v. Wandrey* (2022) 80 Cal.App.5th 962, 982 & fn. 34, review granted Sept. 28, 2022, S275942.)

Recently, the court that decided *Flores* abandoned its approach in favor of the *Lopez* analysis. (*People v. Ross* (2022) 86 Cal.App.5th 1346, 1355, fn. 8 (*Ross*), review granted March 15, 2023, S278266).) In so doing, the court noted it had based its *Flores* test entirely on *Sandoval, supra,* 41 Cal.4th 825, which had addressed *Cunningham* error under the *previous* version of section 1170. (*Ross, supra*, 86 Cal.App.5th at pp. 1354, 1355.) Under the amended version of section 1170, however, all facts underlying the circumstances used to justify imposition of the upper term must be found true by a jury. (*Ross, supra*, 86 Cal.App.5th at pp. 1353–1355 & fn. 8; § 1170, subd. (b).) As such, reliance on *Sandoval* was no longer appropriate. (*Id.* at p. 1355, fn. 8.) The court also found "the rationale for adding a state law harmless error component both logical and compelling," because defendants are "entitled to

13

sentencing decisions made in the exercise of the 'informed discretion' of the sentencing court." (*Id.* at p. 1354, internal quotation marks omitted.)

      c.     *Dunn Test*

In *People v. Dunn* (2022) 81 Cal.App.5th 394 (*Dunn*), review granted Oct. 12, 2022, S275655), the court of appeal added a slight variation on the *Lopez* standard, holding that in order to find error harmless, a reviewing court must (1) conclude beyond a reasonable doubt a jury would have unquestionably found true at least one aggravating factor beyond a reasonable doubt; (2) determine whether it is reasonably probable a jury would have found true any remaining aggravating factors relied upon by the trial court to impose an upper term sentence; and (3) conclude it is reasonably probable the trial court would not have exercised its discretion differently had it considered only the aggravating factors provable from the record as determined in the prior steps. (*Dunn*, at pp. 409–410; see also *People v. Zabelle* (2022) 80 Cal.App.5th 1098, 1112–1113 [applying similar variation as *Dunn*].)

The *Dunn* court concluded it was not necessary to apply the stricter constitutional standard for harmless error to all aggravating factors at the first step because SB 567 itself mandated only a state-law created right to a jury trial. (*Dunn, supra*, 81 Cal.App.5th at p. 408.) As such, any *Cunningham/Sixth Amendment* error could be cured by *Sandoval*'s stricter standard as applied to a single-aggravating factor, while any SB 567-related error could be cured by the more lenient state law harmless error standard as applied to the remaining aggravating factors. (*Dunn, supra*, 81 Cal.App.5th at p. 409.)

14

C.   *Analysis*

Appellant, citing *Lopez*, argues the trial court imposed the upper term on count 1 based on a single aggravating factor, Ashley's purported perjury, and the court's reliance on this factor cannot be deemed harmless. We agree and, as explained below, find remand necessary under any standard on the issue.[4]

In arguing Ashley's perjury was a viable circumstance in aggravation, the prosecutor submitted no evidence on the issue other than asserting Ashley's trial testimony differed from a prior statement to a defense investigator.

The trial record, in turn, reflects during cross-examination, the prosecutor asked Ashley if she had seen a written report of a statement she gave to a defense investigator in early 2020. After Ashley acknowledged she had viewed the report, the prosecutor asked Ashley, "you told that investigator somehow your car ended up colliding with the other man's car," to which Ashley responded, "No. I did not say that." The prosecutor then asked, "So your position is this defense investigator wrote your statement down wrong," to which Ashley responded "yes" and reiterated, "there was no collision." A forensic expert then testified that in examining appellant's truck, he found no damage or black box evidence consistent with a collision.

During deliberations, the jury requested a read-back of the prosecutor's cross-examination of Ashley, "specifically, around her statement about the

---

[4]   Although the trial court noted at the outset of its discussion there "are also some aggravating factors," it never discussed, nor identified, any other factor besides Ashley's purported perjury in imposing the upper term. (Cf. *Flores*, *supra*, 75 Cal.App.5th at pp. 499–500 [trial court expressly cited to several aspects of defendant's criminal history in imposing upper term sentence].)

collision." The jury also requested a read-back of Judy Hughes' testimony. The jury thereafter asked whether, for count 1, a "collision ha[s] to occur" or "contact ha[s] to happen?" The court answered "no" to both questions. The jury also asked whether "a car chase [can] be interpreted to be an assault?" The trial court responded that it depended upon the facts of the case, and referred the jury to CALCRIM No. 875, the standard instruction on assault with a deadly weapon. The following day, after additional deliberations, the jury returned its guilty verdicts.

In light of this record, we cannot conclude the jury would have found Ashley committed perjury had it been required to make a finding on the issue. (*Lopez*, *supra*, 78 Cal.App.5th at pp. 466–468; *Dunn*, *supra*, 81 Cal.App.5th at pp. 409–410; *Flores*, *supra*, 75 Cal.App.5th at pp. 500–501.)

Respondent nevertheless insists remand is unnecessary under SB 567. In so arguing, respondent makes no mention of the trial court's reliance on the perjury factor. Nor does respondent cite any of the harmless error tests issued by courts post-SB 567. Instead, respondent argues that "the trial court relied on appellant's prior criminal history in imposing the upper term" and points out under newly amended section 1170, a sentencing court "may rely upon certified records of a defendant's prior convictions in selecting the sentence to impose without submitting the prior conviction to a jury." (§ 1170, subd. (b)(3).)

There are several flaws with this line of argument.

First, in arguing appellant's criminal history supported circumstances in aggravation, the prosecutor cited to the probation report for the instant offense, as opposed to official records of the underlying convictions. A probation report does not qualify as a "certified record of conviction" within the meaning of section 1170, subdivision (b)(3). (See *Dunn*, *supra*, 81 Cal.

16

App. 5th at p. 401 ["a probation report is not a certified record of conviction" under recently amended § 1170]; see also *People v. Zabelle, supra,* 80 Cal.App.5th at p. 1114 [noting trial court relied on probation report for findings regarding defendant's criminal history and thus none of these findings were rendered in compliance with the current text of § 1170].)

Second, although appellant's counsel acknowledged appellant had suffered prior convictions, "section 1170, subdivision (b)(3) contains no provision regarding stipulations by the defendant." (*Dunn*, *supra*, 81 Cal.App.5th at p. 401.) Moreover, counsel argued the convictions were old and non-violent, and the instant offense was an aberration. Thus counsel did not admit to any of the three conviction-related factors argued by the prosecution in its sentencing memorandum (i.e., increasing seriousness, prior prison terms, and poor performance on probation). More importantly, at appellant's sentencing hearing the trial court discussed appellant's criminal history only in reference to the *mitigating factors* it found in this case.

In claiming the trial court "relied" on appellant's criminal history in imposing the upper term, respondent cites to the transcript of a previous hearing in which the trial court considered appellant's request to release him on bail pending sentencing. In making this determination, the trial court consulted section 1166—the relevant statute on the issue—and referenced appellant's prior conviction history solely in that context.

Therefore, the sentencing transcript reflects the trial court found several mitigating factors and supported its imposition of the upper term with a single factor in favor of aggravation (appellant's purported subornation of perjury). Since we cannot be satisfied the jury would have found this factor true under the reasonable doubt standard, the error cannot be deemed harmless. (*Lopez, supra,* 78 Cal.App.5th at pp. 466–468; *Dunn,*

17

*supra*, 81 Cal.App.5th at pp. 409–410; *Flores*, *supra*, 75 Cal.App.5th at pp. 500–501.)

Accordingly, we vacate and remand appellant's case for resentencing consistent with amended section 1170, subdivision (b).[5]

//

//

//

//

//

//

//

//

//

//

//

//

//

---

[5] As previously noted, appellant also asks his case be remanded in light of AB 124. AB 124, effective January 1, 2022, sets the low term as the presumptive term when any of the following are a "contributing factor" to the offense: (1) the person has experienced psychological, physical, or childhood trauma; (2) the person is or was a youth at the time of the commission of the offense; or prior to the offense, or at the time of the commission of the offense, or (3) the person is or was a victim of intimate partner violence or human trafficking. (See Stats. 2021, ch. 695, § 5.3, adding § 1170, subd. (b)(6).) Although appellant does not point to any criteria he might satisfy under AB 124, appellant is free to argue the applicability of AB 124 at his resentencing hearing. (*People v. Padilla* (2022) 13 Cal.5th 152, 161–163 [defendant is entitled to benefit of any law in effect at time of resentencing hearing].)

**DISPOSITION**

Appellant's sentence is vacated, and the matter is remanded for resentencing in accordance with section 1170, as amended by SB 567. At the resentencing hearing, the court may consider the applicability of AB 124 to appellant's case.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


ZUKIN, J.*

We concur:


CURREY, Acting P. J.


COLLINS, J.

---

*Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.